Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Charles J. Kelaher, of New York City, for appellant.
Philip Carpenter, of New York City, for respondent.

PER CURIAM. We think the publication alleged in the complaint was libelous per se, and that the court should have granted the plaintiff's motion for judgment.

The order appealed from is therefore reversed, with $10 costs and disbursements, and the plaintiff's motion for judgment granted, with $10 costs, with leave to the defendant to withdraw demurrer and to answer within 20 days on payment of costs in this court and at Special Term.

---

(158 App. Div. 768.)

### BARLOW v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department.   November 12, 1913.)

COMMERCE (§ 27*)—"INTERSTATE COMMERCE"—WHAT CONSTITUTES—RAILROADS.

> The engineer of a switch engine, who was switching coal cars containing an interstate shipment of coal so that they could be dumped into the railroad company's bunkers from which the railroad's locomotives, both those engaged in interstate and those in intrastate commerce, would coal, is engaged in "interstate commerce" within the purview of the federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

> [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*
> For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

Appeal from Trial Term, Cortland County.

Action by James H. Barlow against the Lehigh Valley Railroad Company. From a judgment for plaintiff and an order denying its motion for new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

Tompkins, Cobb & Cobb, of Ithaca, for appellant.
Davis & Lusk, of Cortland, for respondent.

LYON, J.   The important question involved upon this appeal is whether the plaintiff was employed in interstate commerce at the time he received the injuries complained of, and hence whether the action is maintainable under the federal Employers' Liability Act. The material facts are undisputed. A portion of one of the divisions of defendant's railroad extended from Cortland, N. Y., southerly to Sayre, Pa., and beyond, and from Cortland northerly to Canastota, N. Y., where it intersected the New York Central Railroad. During the month of July, 1912, the defendant was running two milk trains each week day and one on Sunday from Cortland through Sayre to points farther south, and was also running trains carrying freight and passengers daily between Cortland and Sayre, and between Cortland and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Canastota and other points, connecting with the New York Central Railroad, carrying cars and freight consigned to within and without state points. The locomotives drawing these trains northerly did not pass without the state, and those going to Sayre, excepting those drawing milk trains which ran through to Sayre, were replaced by other locomotives at Elmira, N. Y., or Van Etten, N. Y., excepting upon extraordinary occasions or in emergencies.

On July 27, 1912, three car loads of defendant's coal contained in cars which could be dumped and which had been shipped by it from Sayre to Cortland, one of which had been received at the latter place July 3d and the other two July 10th, and placed on a siding to be used whenever required in coaling defendant's locomotives, were taken from the siding by defendant's yard engine, of which plaintiff was the engineer, and pushed on defendant's elevated coal trestle at Cortland to be dumped into defendant's coal pockets from which the coal was to be discharged through chutes into the tenders of defendant's locomotives, whether used about the Cortland yard or in interstate or intrastate commerce. These coal pockets supplied about 40 per cent. of the coal used at Cortland by defendant's locomotives, and the remaining 60 per cent. was shoveled into the tenders from flat cars which did not have open bottoms, and hence could not be dumped, standing in the Cortland yards.

After the switch engine had pushed the three cars of coal upon the trestle, and while standing upon the trestle in charge of the fireman, who at plaintiff's request had temporarily exchanged places with plaintiff, the attention of the plaintiff was called to the fact that one end of the brake beam of the tank was down, whereupon the plaintiff and another employé of the defendant endeavored to fix it. While the plaintiff was partly under the tank, the conductor signaled to the fireman to back the engine, which the fireman did suddenly, without giving any signal, and the plaintiff was caught under the wheels, his right leg severed, and other serious injuries inflicted, to recover damages on account of which this action has been brought. Upon the trial it was conceded that the coal contained in the three cars was used in coaling intrastate and interstate locomotives kept in defendant's roundhouse at Cortland. The trial judge submitted the case to the jury under the federal statute, charging them that the fact that an employé who was injured may have been guilty of contributory negligence shall not completely bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of his negligence. The defendant duly excepted to the submission of the case to the jury under the federal statute, and the validity of such exception furnished the serious question for consideration upon this appeal from the judgment entered upon a verdict in favor of the plaintiff.

The statute entitled "An act relating to the liability of common carriers by railroad to their employés in certain cases" (Act April 22, 1908, 35 Stat. at L. 65, c. 149, as amended by Act April 5, 1910, 36. Stat. at L. 291, c. 143, U. S. Comp. Stat. Supp. 1911, pp. 1322, 1324), commonly known as the federal Employers' Liability Act, provided, so far as is material to be noticed here:

"That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while 'he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier. * * *"

The crucial question is: Was the plaintiff, at the time he sustained the injuries complained of, employed by the defendant in interstate commerce within the meaning of the act?

The only authority necessary to be considered by us is the case of Pederson v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, which refers to all the leading cases bearing upon the question. In that case, decided by a divided court, it was held that the plaintiff, who was an iron worker in the employ of defendant, which was engaged in transporting passengers and freight by railroad, in both interstate and intrastate commerce, and who was injured, through the negligence of a coemployé by being run down by an intrastate passenger train, while plaintiff was carrying a sack of bolts to be used in repairing a bridge which was regularly in use in both interstate and intrastate commerce, was employed in interstate commerce within the meaning of the federal Employer's Liability Act. In the prevailing opinion the court says:

"Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. * * * The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce. * * * It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of a larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

In the dissenting opinion it is said:

"Transportation has been defined as commerce, and those engaged in transportation are employed in commerce. * * * It is conceded that a line must be drawn between those employés of the carrier who are employed in commerce and those engaged in other departments of its business. It must be drawn so as to take in on one side those engaged in transportation, which is commerce, otherwise there is no logical reason why it should not include every agent of the company; for there is no other test by which to determine when he must sue under the state statute and when under the act of Congress; for if a man on his way to repair a bridge is engaged in interstate commerce, then the man in the shop who made the bolts to be used in repairing the bridge is likewise so engaged. If they are, then the man who paid them their wages, and the bookkeeper who entered those payments in the accounts, are similarly engaged. For they are all employed by the carrier, and the work of each contributes to its success in hauling freight and passengers."

The respondent contends that at the time of receiving the injuries he was employed in interstate commerce in two senses, that he was

engaged in the work of delivering, upon the coal trestle, coal which had been shipped from Sayre for that purpose, the delivery of which had been temporarily suspended during the time the car had remained upon the siding; and that he was engaged in delivering coal to be necessarily used in part by locomotives employed in hauling trains engaged in interstate commerce. He also contends that to switch interstate cars was to engage in interstate commerce, citing Thornton's Federal Employer's Liability Acts (2d Ed.) pp. 48, 49; Johnson v. Southern Pacific R. R., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

Undoubtedly the ultimate destination of the three car loads of coal were the coal pockets, which could only be reached by running the cars upon the trestle. Depositing the coal in the pockets was one step towards placing it in the tenders of the locomotives. How different would have been the liability of the defendant if plaintiff had been injured while dumping the coal directly into the tender of the locomotive attached to a train engaged in interstate commerce?

Coal for use in defendant's locomotives was as indispensable to the defendant engaging in interstate commerce as was a track or safe bridge upon which defendant might operate its trains.

While it is by no means clear that the plaintiff was engaged in "interstate commerce" within the meaning of that term as used in the federal Employers' Liability Act, yet we are inclined under the authority of the Pederson Case to affirm the judgment. All concur.