ROSS *v.* HINES.

1. COMMERCE—RAILROADS—INTERSTATE COMMERCE—SWITCHMAN.
   A switchman engaged in switching cars loaded with coal, brought in from another State, for the purpose of rearranging them into trains to be taken to their destination in this State, *held*, to be engaged in interstate commerce.

2. RELEASE—COMPROMISE AND SETTLEMENT—FRAUD—QUESTION FOR JURY.
   In an action by the administrator of the estate of a deceased employee, under the Federal employers' liability act (U. S. Comp. Stat. §§ 8657-8665), to recover damages for the death of deceased, where the defense was settlement and release, the question as to whether said settlement, which was made with an uncle of deceased, was obtained by fraud and collusion, *held*, under the evidence, for the jury.

3. SAME—INTERESTS OF RAILROAD AND DIRECTOR GENERAL—QUESTION FOR JURY.
   The question as to whether the settlement was made, as contended by plaintiff, with the railroad company and not with defendant, director general of railroads, under the Federal government, *held*, for the jury, although somewhat narrow, the interests of the railroad and defendant being nearly identical.

4. DAMAGES—FEDERAL EMPLOYERS' LIABILITY ACT—DEATH — SURVIVAL—MEASURE OF DAMAGES.
   Under the Federal employers' liability act (U. S. Comp. Stat. §§ 8657-8665), where the action survives to the representatives of deceased, recovery is limited to what the dependents have lost, and the trial court was in error in submitting it on the theory of what decedent's estate had lost.

5. COSTS—QUESTION RAISED FOR FIRST TIME IN APPELLATE COURT.
   Where the question requiring reversal was raised for the first time in the Supreme Court, no costs will be allowed.

As to when employees are deemed to be engaged in interstate commerce within meaning of Federal employers' liability act, see note in 47 L. R. A. (N. S.) 51.

On elements and measure of damages to injured employee under Federal employer's liability act, see note in 47 L. R. A. (N. S.) 80.

Error to Cheboygan; Shepherd (Frank), J.  Submitted October 6, 1921.  (Docket No. 28.)  Decided December 22, 1921.

Case by Joseph Ross, administrator of the estate of Arthur J. Ross, deceased, against Walker D. Hines, director general of railroads, for the negligent killing of plaintiff's decedent.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Victor D. Sprague* (*J. Walter Dohany,* of counsel), for appellant.

*Homer H. Quay* and *Benjamin & Betzoldt,* for appellee.

BIRD, J.  This suit was begun under the Federal employers' liability act (U. S. Comp. Stat. §§ 8657-8665) to recover damages for the death of Arthur J. Ross, because of the failure of defendant to observe the provisions of the Federal safety appliance act (U. S. Comp. Stat. § 8605 *et seq.*) and the Federal boiler inspector act (U. S. Comp. Stat. §§ 8630-8639).  It appears that Arthur J. Ross was a member of the switching crew in the yards of the Michigan Central railroad at River Rouge while that railroad was being operated by defendant.  On January 29, 1918, plaintiff's intestate with other members of his crew was riding on the foot board on the front end of a switching engine.  They were going down track number 7 to shove the cars standing thereon closer together so that other cars could be placed on the track.  As they approached the cars the signal was given to the engineer to slow down.  A large amount of steam was escaping from the steam cocks and the signal was not observed.  Plaintiff's intestate attempted to make the coupling, but failed because of a broken jaw on the coupler of the engine.  By reason of this

defect the impact drove the car to the right and forced the left side of it up against plaintiff's intestate, injuring him so badly that he died the following day.

1. Defendant questions plaintiff's right to recover on the ground that it was not shown on the trial that plaintiff's intestate was engaged in interstate commerce. The testimony showed that the cars standing on track number 7 on which they attempted to couple the engine were coal cars. They arrived the evening before from Toledo loaded with coal and Detroit was their destination. In the usual course of the operation of trains on the Detroit-Toledo line it was stopped at River Rouge, to be later broken up and rearranged in other trains and taken to the city and delivered to the consignees. There were 7 cars of the coal and it was consigned to the defendant to be used in the operation of the railway.

A great many fine distinctions have been indulged in by the courts in determining whether commerce was interstate or intrastate, but we have little hesitancy in saying that the cars which plaintiff's intestate and his companions intended to move when the accident occurred were interstate commerce. The cars had come into the State from a foreign State on an errand of interstate commerce on a railway engaged in interstate commerce. They were loaded with interstate freight. They had not yet reached their destination and would not until the cars were rearranged in other trains and taken to the city of Detroit and delivered to the consignees. *Rich* v. *Railroad Co.*, 166 Mo. App. 379 (148 S. W. 1011) ; *Barlow* v. *Railroad Co.*, 158 App. Div. 768 (143 N. Y. Supp. 1053) ; *Montgomery* v. *Southern Pacific Co.*, 64 Or. 597 (131 Pac. 507, 47 L. R. A. [N. S.] 13) ; *Seaboard Air Line Ry.* v. *Koennecke*, 239 U. S. 352 (36 Sup. Ct. 126).

2. Defendant made the further contention that if plaintiff had a cause of action it had been settled and

released. The claimed settlement was made with one Sam Mongrain, the boy's uncle, who lived on a farm near Cheboygan. It appeared that plaintiff's intestate had lived with Mongrain while a boy. Settlement was made with him for $760. It further appeared that the claim agent, Cook, went to Cheboygan and arranged to have Mongrain appointed special administrator on the theory that he was a creditor of the boy's estate. After this was done the settlement was made and the release signed by him. Before the father instituted this suit the $760 were tendered back to the claim agent, by whom it was paid, but he refused to accept it. The settlement was sought to be voided on the ground that by collusion and fraud a settlement was made; that it was a negligent and improvident settlement and was not for the best interests of the estate. It is claimed this was shown in part by the small amount accepted in settlement thereof, and that the settlement was made without the knowledge of the father, who lived only a few miles away. It was shown that while Mongrain was appointed on the theory of his having been a creditor, that he was not a creditor. He admitted upon the witness stand that he was not a creditor, and he further testified that he understood when he made the settlement that he was receiving compensation from the State. Mongrain did not understand how the accident occurred and did not seek legal advice in relation to the settlement, neither did he advise with the probate court concerning it. We are impressed that there was enough in the testimony to submit to the jury on the question whether the settlement was brought about by collusion and fraud. If the jury found it was so made they were justified in disregarding its terms.

It was also insisted that the settlement was made with the Michigan Central Railroad Company and not

with defendant.    This was a somewhat narrow contention, as the interests of the Michigan Central and defendant were nearly identical.    The testimony, however, tended to show that plaintiff was right in this contention.    This question was likewise one for the jury.

3. The trial court submitted the case on the common law theory of damages and plaintiff recovered $5,000.

The argument is made that this was error.    It having been determined that plaintiff's intestate was engaged at the time in interstate commerce no recovery could be had except under the Federal act.    *Michigan Cent. R. Co.* v. *Vreeland,* 227 U. S. 59 (33 Sup. Ct. 192, Ann. Cas. 1914C, 176).    The Federal act provides for a different rule of damages where the action survives to the representatives.    The question of damages was submitted on the theory of what plaintiff's intestate's estate had lost, whereas the Federal law provides that the recovery shall be limited to what the dependents have lost.    This question is considered and the rule stated in 18 R. C. L. p. 862.    It is there said:

"Under the Federal employers' liability act, as interpreted by the Supreme Court of the United States, a new and distinct right of action is given for the benefit of the dependent relatives named in the statute, and the damages recoverable are limited to such loss as results because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee.    The damage is limited strictly to the financial loss sustained.    If there is no reasonable expectation of pecuniary benefits, or no financial loss sustained, then there can be no recovery under this act."

For a discussion of the rule of damages under the Federal act see note to *Lamphere* v. *Navigation Co.,* 47 L. R. A. (N. S.) 80 (116 C. C. A. 156, 196 Fed. 336).

In view of this error the case must be reversed and a new trial ordered. It appearing that defendant did not raise this question in the trial court, no costs will be allowed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.