## 10892

### THORNHILL v. DAVIS, DIRECTOR GENERAL

#### (113 S. E. 370)

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE MINIMIZES DAMAGES UNDER FEDERAL ACT.—Under the Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665), contributory negligence does not bar recovery, but minimizes the damages.

2. TRIAL—REFUSAL TO DIRECT VERDICT ON CONFLICTING EVIDENCE PROPER.—Where the evidence on the issue of liability was conflicting, a refusal to direct a verdict was proper.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE HELD FOR JURY IN DETERMINING DAMAGES UNDER FEDERAL ACT.—Under federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665), where the evidence was conflicting as to how plaintiff's intestate came to his death, the Court's refusal to instruct that contributory recklessness

NOTE: For applicability of Federal Employers' Liability Act or state employers' liability acts to injuries to railroad employees while engaged in handling interstate mail, see L. R. A., 1918D, 426.

Track repairing and work in connection as furthering interstate commerce within Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.), 55; L. R. A., 1915C, 62; L. R. A., 1918E, 859.

What employees are engaged in interstate commerce within Federal Employers' Liability Act, see 10 A. L. R., 1184.

Applicability of state statutes and rules of law in determining damages in action under Federal Employers' Liability Act, see 12 A. L. R., 711.

or willfulness was a complete defense was proper; the determination of the proper reduction of any degree of contributory negligence being for the jury.

4. APPEAL AND ERROR—COURT'S DISCRETION IN ALLOWING AMENDMENTS NOT DISTURBED.—Generally, in the absence of abuse, the trial Court's discretion in allowing amendments either before or during trial will not be disturbed, where no rule of law is violated.

5. DEATH—DAMAGES UNDER FEDERAL ACT SETTLED IN ONE ACTION.—Under the Federal Employers' Liability Act, § 9 (U. S. Comp. St., § 8665), providing that there shall be only one recovery for the same injury, a recovery for a wrong to the injured person suffering fatal injuries and a wrong to his beneficiaries must be settled in one action.

6. DEATH—EVIDENCE OF SUFFERING OF DECEASED ADMISSIBLE.—In an action under Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665) for a fatal injury, it was proper to admit evidence of suffering of deceased, where at least a half hour elapsed after the injury before death.

7. APPEAL AND ERROR—GROUND FOR EXCLUSION OF EVIDENCE SHOULD BE STATED WHEN EVIDENCE OFFERED.—An exception to the admission of evidence may be overruled, where no ground of objection was stated when the evidence was offered.

8. PLEADING—NOT ERROR TO ADMIT EVIDENCE RESPONSIVE TO PLEADINGS IN ABSENCE OF MOTION TO STRIKE.—The admission of evidence responsive to the allegations of the complaint about which defendant raised no objection by motion to strike out was not error.

9. MASTER AND SERVANT—EVIDENCE OF CUSTOM ADMISSIBLE.—In an action for injuries to an employee, evidence of custom is admissible to show on what course of conduct on the part of the principal the servant may rely in carrying on the work of the principal.

10. MASTER AND SERVANT—CHARGE ON CARE REQUIRED IN COUPLING CARS HELD SUFFICIENT.—In an action under Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665) for injuries to railroad employee, the refusal to charge that railroad is not required to send a man to end of cars before coupling them was not error, where the jury was instructed that a railroad must do what a man of ordinary prudence in the circumstances would have done.

11. COMMERCE—FEDERAL EMPLOYERS' LIABILITY ACT EXCLUSIVE WHERE INTERSTATE COMMERCE INVOLVED.—The Federal Employers' Liability Act (U. S. Comp St., §§ 8657-8665) supersedes all other acts where the question of interstate commerce is involved.

12. COMMERCE—UNDER FEDERAL ACT BOTH CARRIER AND EMPLOYEE MUST BE ENGAGED IN INTERSTATE COMMERCE—The Federal Employ-ers' Liability Act (U. S. Comp. St. §§ 8657-8665) is applicable only where both the carrier and the employee are engaged in interstate commerce.

13. COMMERCE—EMPLOYEE REPAIRING TRACK ENGAGED IN "INTERSTATE COMMERCE."—A railroad employee, engaged in repairing a track used by the railroad for carrying passengers and freight from points without the State through the State, was engaged in interstate commerce.

14. MASTER AND SERVANT—EMPLOYMENT IN INTERSTATE COMMERCE HELD QUESTION FOR JURY.—Where the evidence afforded a sufficient basis for the conclusion that cars loaded without the State were a part of a shifting train at the time of injury, it was a jury question whether the train was engaged in interstate commerce.

15. COMMERCE—CARRIER OPERATED BY DIRECTOR GENERAL HELD INTER-STATE CARRIER.—The fact that a railroad was being operated by the Director General of Railroads does not prevent it from being an interstate common carrier.

16. APPEAL AND ERROR—FORM OF VERDICT NOT CONSIDERED WHERE NO EXCEPTION TO INSTRUCTION OR OBJECTION TO VERDICT MADE BELOW.—Where no exception was made to the Court's charge as to the form of a verdict, and no objection to the verdict was made when it was rendered, the question of the form of the verdict will not be considered on appeal.

17. DEATH—$14,600 DAMAGES TO WIDOW HELD NOT EXCESSIVE.—In an action under the Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665), where plaintiff's husband lived only about one-half hour after the fatal accident, a verdict of $14,600 *held* not excessive as a matter of law.

Before PRINCE, J., Greenville, April 1921.   Affirmed.

Action by Annie Thornhill as administratrix of the estate of W. M. Thornhill, deceased, against James C. Davis, Director General of Railroads.   Judgment for plaintiff and defendant appeals.

*Messrs. Bonham & Price,* for appellant, cite:  *Case not within Federal Employees Liability Act:*   U. S. Comp. St., Sec. 8657; 232 U. S. 256; 233 U. S. 478; 242 U. S. 356; 242 U. S. 306; 239 U. S. 556; 154 Pac. 915; 203 S. W.

542; 172 Pac., 726; 111 Atl., 716; 100 Atl., 968. *Contrib-*
*utory recklessness and willfulness a defense under the Fed-*
*eral Statute:* U. S. Comp. St., 1916, Sec. 8659; 36 Cyc.
1178; 25 R. C. L. 1056; 56 S. C. 181; 109 S. C. 80.

*Messrs. Martin & Henry,* for respondent, cite: *Action*
*for pain and suffering, and for loss to relatives properly*
*brought together:* 238 U. S. 599; 59 L. Ed. 1482; 176
S. W. 689; 155 S. W. 93; 47 L. R. A. (N. S.) 82; 149 N.
W. 14; 115 S. C. 172. *Amendment properly allowed:* 109
S. C. 288; 109 S. C. 352. *Admissibility and relevancy of tes-*
*timony is largely in discretion of trial Court:* 104 S. C., 29.
*Testimony as to allegations allowed to remain in complaint*
*admissible:* 102 S. C. 75; 70 S. C. 10; 60 S. C. 381; 61 S. C.
329; 73 S. C. 12; 101 S. C. 86. *Custom as establishing*
*rule:* 102 S. C. 75; 97 S. C. 6; 98 S. C. 130; 68 S. C. 513;
86 S. C. 44; 115 S. C. 33. *Some evidence and question*
*was for the jury:* 101 S. C. 109; 109 S. C. 357. *Degrees*
*of negligence and necessary proof under Federal Act:* 104
S. C. 31; 117 S. C. 44; 104 S. C. 175; 104 S. C. 379; 98
S. C. 379; 93 S. C. 265; 90 S. C. 462. *On question of non-*
*suit defendant's testimony will be considered:* 110 S. C.
565. *Deceased engaged in Interstate Commerce:* 64 L.
Ed. 794; 64 L. Ed. 796; 63 L. Ed. 869; 64 L. Ed. 260;
58 L. Ed. 695; 55 L. Ed. 590; 60 L. Ed. 324; 57 L. Ed.
1125; 97 S. C. 52. *Train engaged in Interstate Commerce:*
57 L. Ed. 1127; 58 L. Ed. 596; 109 S. C. 357. *Remarks*
*of Judge during trial, but not to jury, not error:* 87 S. C.
244; 95 S. C. 180; 93 S. C. 149; 87 S. C. 241; 61 S. C.
17; 84 S. C. 1; 78 S. C. 505; 47 S. C. 519; 49 S. C. 413;
52 S. C. 537; 40 S. C. 37; 39 S. C. 250; 38 S. C. 31; 36
S. C. 534; 33 S. C. 100; 79 S. C. 526; 71 S. C. 136; 72
S. C. 350; 50 S. C. 299; 82 S. C. 321; 88 S. C. 98; 88 S.
C. 165; 81 S. C. 161; 115 S. C. 30; 112 S. C. 303.
*Whether action falls under Lord Campbell's Act or Federal*
*Act is for the jury, under proper instructions:* 110 S. C.

529; 106 S. C. 219; 109 S. C. 377; 100 S. C. 297; 101 S. C. 108; 58 L. Ed. 1230. *As to contributory recklessness:* L. R. A. 1915C, 85; 47 L. R. A. (N. S.) 80; 60 L. Ed. 1118; 60 L. Ed. 1124; 60 L. Ed. 979; 58 L. Ed. 422. *Oral request to charge need not be regarded:* 104 S. C. 33; 78 S. C. 401; 88 S. C. 162. *Form of verdict waived unless objection made at the time:* 113 S. C. 153; 10 S. C. 497; 66 S. C. 432; 25 S. E. 230; 76 S. C. 505; 57 L. Ed. 787. · *Director General bound by Federal Employees' Act:* U. S. Comp. Stat. 1918; Note 1974-A; Id Sec. 3115¾ j; Sec. 3315 ¾ o. *Verdict not excessive:* 115 S. C. 30; 103 S. C. 117; 115 S. C. 171; 59 L. Ed. 1163.

June 2, 1922.

The opinion of the Court was delivered by ACTING ASSOCIATE JUSTICE H. N. EDMUNDS.

This action was brought by Annie Thornhill, as administratrix of the estate of her deceased husband, against James C. Davis, Director General of Railroads, as agent under the Transportation Act of 1920. 41 Stat. 456. As the treatment of the case shows throughout trial, and upon argument in this Court, the action was based upon the statutory liability created under the act of Congress commonly referred to as the Federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).

As originally drawn, the complaint alleged damages to the intestate's wife and children as his personal representatives, heirs at law, and distributees on account of the alleged injuries sustained by them in the loss by death of the husband and father. However, by an amendment to the complaint, which, as is stated in the case for appeal, was allowed as a separate cause of action, damages were asked in addition for the pain and suffering, in the particulars alleged, endured by the deceased on account of the injuries inflicted and from which he subsequently died.

The answer, in addition to denying the allegations of the complaint setting forth the alleged delicts on the part of the defendant, sets up the defenses of contributory negligence and assumption of risk. The issue thus being joined, the action came on for trial before Hon. George E. Prince and a jury at the April term, 1921, of the Court of Common Pleas for Greenville County.

Motions were made by the defendant for a nonsuit, and for a direction of verdict, both of which were overruled. Subsequently a verdict was rendered by the jury in favor of the plaintiff in the form which will hereinafter be referred to more particularly in considering the exceptions relating to the form of the verdict.

The plea of contributory negligence on the part of the plaintiff's intestate, and the testimony relating thereto, form the basis of one of the principle exceptions made by appellant. We will accordingly take up the consideration of this matter first.

Contributory negligence as a defense is applicable to an action under the Federal statute to the extent, but to the extent only, of operating to minimize the damages in case the jury should find that the injured party was guilty of contributory negligence in the particulars alleged in the answer. The appellant contends that this rule does not apply in the present case, for the reason that the testimony established, not merely contributory negligence on the part of the plaintiff's intestate, but established contributory recklessness and willfulness. The answer with great particularity alleges the facts constituting the defense of the alleged contributing cause on the part of the deceased, alleging that—

He had gone "to the end of said string of cars for the purpose of seeking shade and sat upon the rail at the end of the car; * * * that in this position * * * the engine * * * coupled up * * * to the said car at the opposite end of

said string of cars, the impact of which caused the car against the wheel of which the deceased was leaning to run over and kill the deceased; and that the deceased was negligent of his own safety."

The assignments of error under the seventh, eighth, thirteenth, and seventeenth assignments are that the trial Judge erred in overruling the motion for a directed verdict upon the ground that the testimony showed that the deceased met his death by his own gross negligent and careless act, as was set up in the defense referred to, and, further, that the trial Judge erred in failing to charge the jury that the plea of "contributory recklessness or willfulness" was a complete defense under the Federal Employers' Liability Act—that is to say, that while the defense of contributory negligence merely operates in mitigation of damages, on the other hand contributory recklessness or willfulness operates as a bar to the action when established by competent testimony.

While it is not essential to our conclusion upon the exceptions raised relating to this matter, it may be remarked that Congress in limiting the force and effect of contributory negligence in an action of this character had in mind the changing of the application of the rule of evidence in such cases. Instead of such evidence operating to defeat the right of action entirely, after the passage of the act, in cases brought under the act, such evidence operates only to a reduction of the damages which the plaintiff would otherwise, in the absence of such contributing cause, be entitled to receive. Under this rule of law, the matter of contributory negligence and the degree thereof, if any, becomes one for the jury to consider in determining the amount of damages which should be awarded in case it should be found that any damages were recoverable. The reduction in amount then would vary with the degree of negligence operating as a contributing proximate cause to the injury by the injured party—if slight, the jury would be warranted in making a

slight reduction in the amount which it would have other-
wise awarded; if great, it would be warranted in making
an entirely different estimate of the amount to which the
damages should be reduced. The allegations of the degrees
of negligence and the proof thereof are matters then to be
considered by the jury in reaching its conclusion as to the
amount to be awarded after having concluded that a case
of liability has been established. In any event, of course,
it is essential that liability must be established, and the nec-
essity therefor eliminates recovery when the injury com-
plained of is caused solely by the act of the one injured,
whether it be done by him either negligently or recklessly.
There is left open, however, in all cases where the evidence
is conflicting, the determining by jury of the amount of re-
covery and the proper reduction thereof to be varied, as we
have said, according to the degree contributed by the in-
jured party to his injury.

Whether then there was error on the part of the trial
Judge in the particulars assigned depends upon whether
from the testimony it was to be concluded as a matter of
law that the deceased came to his death solely on account
of the acts alleged in the answer by way of affirmative de-
fense, or whether there was an issue of fact with regard
thereto to be submitted to the jury. The appellant assumes
that the defense was established by uncontradicted testi-
mony, and that the only conclusion which could be drawn
from the testimony was that the plaintiff's intestate, as
stated in the motion, met his death "solely by reason of
his own gross negligent and reckless conduct" in the par-
ticulars set forth in the motion. That the testimony was
susceptible of an entirely different construction, that a clear
issue of fact was made, and that the issue on this point was
one to be passed upon by the jury is apparent from the
reading of the testimony. The jury could have adopted
appellant's view, or it could, as it did, adopt the plaintiff's
view, namely, that the plaintiff was performing his duties

as foreman of a maintenance force clearing the tracks of the appellant, in which work the plaintiff was actually engaged at the time when, without warning and without observing the proper precautions under the circumstances alleged, and as testified to, the plaintiff's intestate was run over and killed by the train operated by the defendant. The trial Judge, however, with a conflict of testimony on the issues thus joined, could not adopt either view—to have done so would have been error—and his refusal to do so was proper. The assignments of error relating to these matters cannot, therefore, be sustained.

The assignments of error under the first, second, third, fifteenth, and sixteenth exceptions may be considered together. These assignments relate to the amendment to the complaint allowed by the trial Judge. In the first place, the amendment allowed is not to be treated merely as an additional allegation. The case containing exceptions sets forth:

"Defendant objected to the proposed amendment, and after some evidence had been taken, the Court allowed the same, stating at that time and thereafter, that he considered it was a separate cause of action."

The matter of allowing amendments either before trial or during trial to conform to the facts proven, so long as the amendment does not violate a rule of law, is generally a matter of discretion with the trial Judge, and in the absence of an abuse of that discretion will not be disturbed. The amendment here allowed was one made pursuant to notice according to the rules of Court under which an additional cause of action was incorporated in the complaint, alleging damages to the plaintiff's intestate on account of the suffering sustained by him growing out of the alleged negligent conduct on the part of the defendant. The "case" does not state upon what ground the defendant objected to the allowance of the amendment, but upon argument before this Court the position is taken that the error

in allowing the amendment constituted error of law, for the reasons : (1) That the death of the deceased was so close to the injury as to negative the idea of legal damages for suffering; (2) that under the law as announced by this Court, a cause of action for physical pain and suffering of the deceased is a separate and distinct action from an action for death, and therefore must be brought separately; (3) that the Federal Employers' Act does not permit separate actions for suffering.

Taking up these positions in their inverse order, it is clear that under the decision in the case of *St. Louis, I. M. & S. R. Co. v. Craft,* 237 U. S., 648, 35 Sup. Ct., 704; 59 L. Ed., 1163, a recovery for the wrong to the injured person and the wrong to the beneficiaries under the act must be settled once for all in a single action. Prior to the amendment of April 5, 1910, there was no right of action surviving under the act of Congress for the suffering sustained by the deceased injured person, but by the terms of the amendment the right of action which the deceased would have had was made to survive to the personal representatives of such deceased. The concluding words of such amendment were, "But in such cases there shall be only one recovery for the same injury." Section 8665, U. S. Compiled Stat. In the case of *St. Louis, etc., Ry. v. Craft, supra,* this act and the application thereof to the words quoted were considered, the Court saying in part :

"Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a

double wrong.  *Davis v. St. Louis, I. M. & S. R. Co.,* 53 Ark., 117 (7 L. R. A., 283, 13 S. W., 801) ; *Com. v. Metropolitan R. Co.,* 107 Mass., 236; *Bowers v. Boston,* 155 Mass., 244, 249, 15 L. R. A., 365, 29 N. E., 633; *Stewart v. United Electric Light & P. Co.,* 104 Md., 332 [8 L. R. A. (N.. S.), 384, 118 Am. St. Rep., 410, 65 Atl., 49] ; *Mahoning Valley R. Co. v. Van Alstine,* 77 Ohio St., 395, 14 L. R. A. (N. S.), 893, 88 N. E., 601; *Brown v. Chicago & N. W. R. Co.,* 102 Wis., 137, 44 L. R. A., 579, 77 N. W., 748, 78 N. W., 771, 5 Am. Neg. Rep., 255; *Nenecek v. Filer & S. Co.,* 126 Wis., 71, 105 N. W., 225; *Eichorn v. New Orleans & C. R. Light & P. Co.,* 112 La., 235, 104 Am. St. Rep., 437, 36 So., 335; *Vicksburg & M. R. Co. v. Phillips,* 64 Miss., 693, 2 So., 537.    Much stress is laid upon the concluding clause in the new section, 'but in such cases there shall be only one 'recovery for the same injury.' Passing and reserving the question of its application where there has been a recovery by the decedent in his lifetime (see *Michigan Central R. R. v. Vreeland, supra,* p. 70), we think this clause, as applied to cases like the present, is not intended to restrict the personal representative to one right to the exclusion of the other, or to require that he make a choice between them, but to limit him to one recovery of damages for both, and so to avoid the needless litigation in separate actions of what would better be settled once for all in a single action."

The construction so placed upon the act of Congress by the Supreme Court is binding upon this Court, and it is no longer an open question, but a settled one, that all claims growing out of an injury arising under the act, whether to the injured person or to the injured beneficiaries, must be settled in one action.

This being so, it will certainly not be the policy of this Court, even though it had laid down a different rule of procedure, to so enforce that rule as to take away a right of action accorded by the law of the land.    There is, however,

nothing irreconcilable between the decision of *Grainger
v. G. S. & A. R. Co.,* 101 S. C., 399, 85 S. E., 968, relied
on by appellant, and the decision of the Supreme Court of
the United States above quoted from. The decision of this
Court in the case of *Grainger v. Railway, supra,* was an-
nounced in view of the language of a statute of this State,
and the construction so placed upon that statute would nat-
urally be followed by the Courts of the land. On the other
hand, the Supreme Court of the United States has con-
strued the Act of Congress, and the construction thus an-
nounced, establishing the procedure under the act, will like-
wise be followed by this Court. What has been said
disposes of the first, second, fifteenth, and sixteenth ex-
ceptions.

It follows in view of the decision of this Court in
*Peeples v. Railway Co.,* 115 S. C., 115, 104 S. E.,
541, that there was no error as alleged in the third
assignment in permitting testimony as to the pain and
suffering of the deceased while taking him to the hospital
and before his death at the hospital. In that case we note
the following as announced by this Court:

"It was said that the deceased was unconscious, because
he could not speak. That was denied; but, even if Mr.
Peeples could not speak, it was for the jury to say whether
that was proof of unconsciousness, or served to aggravate
his sufferings. The exceptions that raised this question
cannot be sustained."

This announcement is in perfect accord with the adjudi-
cated cases on the subject. It becomes a question of fact
for the jury to say what amount shall be awarded, if any,
for pain and suffering. The time element may be properly
considered, but it is not controlling, and certainly no rule
of law can be deduced which would set forth that where a
given time has elapsed between the injury and death the
idea of legal damages for such pain and suffering was neg-
atived as a matter of law. There are cases where the death

follows the injury so immediately that there is precluded the idea of conscious pain between the happening of the one and the occurrence of the other, but this is not one of those cases. The testimony showed the elapse of at least one-half hour, possibly longer, accompanied by evidence of pain both in the agonizing expression of the countenance and the appeal for assistance in the alleviation of his sufferings. The statement of fact in *Railway v. Craft, supra,,* where the right of action was sustained, showed that the deceased in that case lived only a half-hour; in *Kansas City S. Ry. Co. v. Leslie,* 238 U. S., 599; 35 Sup. Ct., 844; 59 L. Ed.. 1482; the time was "less than two hours"; in *Capital Trust Co. v. Ry.,* 127 Minn., 144; 149 N. W., 14, the deceased lived only 10 minutes. For the reasons stated, this exception likewise cannot be sustained.

The fourth, fifth, and sixth exceptions alleged error in the admission of testimony. The first of these exceptions relates to permitting testimony as to there being a "traveled place" near the place where the deceased was run over and killed. In the first place, no ground of objection was stated when the testimony was offered. This of itself is sufficient ground for overruling the exception; but further than this the testimony was responsive to allegations in the complaint about which the defendant raised no objection by motion to strike out. The cases of *Ragsdale v. Railway,* 60 S. C., 381; 38 S. E., 609; *Dent v. Railway,* 61 S. C., 329, 39 S. E., 527, and *Martin v. Railway,* 70 S. C., 10, 48 S. E., 616, are conclusive of the right to an exception. In *Martin v. Railway,* citing previous cases, it was said:

"But as no * * * motion was made (to strike out) the defendant's first exception, charging reversible error in the admission of testimony concerning them, cannot be sustained."

In addition, it is noted that the Court in charging the jury took from them the consideration of the issue of "a traveled place." The other exceptions relate to testimony being admitted tending to establish the customary method on the part of the railway in operating its trains under conditions similar to those existing at the time this accident happened, and the failure of the company to supply fuses for use under like circumstances. Testimony of custom is relevant when it tends to show upon what course of conduct on the part of the principal the servant may rely in carrying on the work of the principal. It has been so held repeatedly by this Court. *Hutchings v. Mfg. Co.,* 68 S. C., 513; 47 S. E., 710; *Dixon v. Mfg. Co.,* 86 S. C., 435, 68 S. E., 643; *Sturdyvin v. Railway,* 98 S. C., 130, 82 S. E., 275. The exception accordingly cannot be sustained.

Along with these exceptions may be considered the eighteenth assignment of error, made on the ground of the failure of the trial Judge to charge that there was no rule of law, or rule of the company, requiring the sending of "a man to the far end of the extreme car before coupling those cars." In response to this request the Court stated:

"I have charged the jury that the railway company is to do what a man of ordinary prudence in the circumstances would have done."

This is the correct rule, and the exception is overruled.

The remaining exceptions are disposed of in the discussion of the matters to which we shall now direct our attention. They relate to assignments of error: (1) Because it is said the court erred in holding that the Federal Employers' Liability Act supersedes all other acts where the question of interstate commerce is involved; (2) because it is said that there was no evidence that the plaintiff and the defendant were both engaged in

interstate commerce; (3) because it is said that the verdict as rendered cannot be supported as a matter of law.

The first of these objections is concluded by the decision in *Wabash Ry. Co. v. Hays*, 234 U. S., 86; 34 Sup. Ct.. 729; 58 L. Ed., 1226:

"Had the injury occurrred in interstate commerce, as was alleged, the Federal act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the State; in other words, the federal act would have been exclusive in its operation, not merely cumulative."

Our own case of *Ettison v. Railway.*, 110 S. C., 529; 96 S. E., 682, is in accord with this view. In the opinion in the case Mr. Justice Hydrick said:

"It has been so well settled that citation of the cases is unnecessary (some of them are cited in the briefs of counsel) that where it appears, as matter of law, upon the undisputed evidence, that either the State or Federal law is the applicable law, it becomes the duty of the Court to instruct the jury to apply the one or the other as the case may be."

Other cases to like effect are *Camp v. Ry.*, 100 S. C. 297, 84 S. E. 825; *Koennecke v. Railway*, 101 S. C. 108, 85 S. E., 374; *Seaboard Air Line Ry. v. Koennecke*, 238 U. S. 352, 36 Sup. Ct. 126, 60 L. Ed. 324, affirming; and *Cook v. Railway*, 109 S. C. 377, 96 S. E. 148.

There is no serious question that the plaintiff did bring her  action and offer her testimony upon the theory that her right of action, if any, lay under the Federal law, nor that this contention was admitted by the defendant. The whole wage of battle centered around this theory—the plaintiff endeavoring to show by testimony, not only that the deceased was engaged in interstate commerce, in the performance of his duties on that occasion, but that the train which ran over, injured, and killed him was a train engaged in interstate commerce. The defendant endeavoring to show that the train was not so engaged, and that the

operator thereof, to wit, the Director General, as a matter of law, was not an interstate carrier. It has already been stated that the action was so regarded by the trial court, by the respective litigants, and was argued on that basis in this court.    An inspection of the pleadings and the course of trial admits of no other conclusion, and our inquiry, therefore, is limited to a determination as set forth under the cases cited, whether the plaintiff supported her contention by sufficient evidence to take the case to the jury, or whether the trial Court erred in not granting the motions for a nonsuit, or a directed verdict.

The contention that both the carrier and the employee must be engaged at the time of the injury in interstate commerce is supported by the decisions construing the following language of the act:

"Every common carrier by the railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." U. S. Comp. St. § 8657.    See *N. C. Ry. Co. v. Zachary,* 232 U. S., 256; 34 Sup. Ct., 305; 58 L. Ed., 591; Ann. Cas. 1914C, 159, where it is said:

"In order to bring the case within the terms of the federal act (35 Stat. 65, c. 149, printed in full in 223 U. S. 6, 32 Sup. Ct 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44) defendant must have been, at the time of the occurrence in question, engaged as a common carrier in interstate commerce, and plaintiff's intestate must have been employed by said carrier in such commerce."

Other cases which are to like effect are *Shanks v. D., L. & W. Ry.,* 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *Erie Ry. Co. v. Welsh.* 242 U. S.306, 37 Sup. Ct 116, 61 L. Ed. 319; *Alexander v. Great Northern Ry.,* 51 Mont. 565, 154 Pac. 915, L. R. A. 1918E, 852; *Foley v. Hines,* 119 Me. 425, 111 Atl. 716.

That the plaintiff's intestate was engaged in interstate commerce at the time admits of no question in the light of the testimony.   He was foreman of a track repair and maintenance force clearing the track and right of way of a carrier, which right of way was used by it in carrying passengers and freight for hire from points without the State of South Carolina through the State of South Carolina.   This fact was not questioned below in either the motion for the nonsuit or the motion for a directed verdict.   The ground, therefore, has not been laid for the review of this matter here.   However, leaving that aside, the plaintiff's intestate's employment cannot be regarded other than as employment in interstate commerce under the definitions given in *Erie Ry. Co. v. Collins,* 253 U. S. 77, 40 Sup. Ct. 450, 64 L. Ed. 794; *Shanks v. D., L. & W. Ry. Co., Supra, and Southern Ry. v. Industrial Accident Co.,* 251 U. S. 259, 40 Sup. Ct. 130, 64 L. Ed. 260, 10 A. L. R. 1181, and in our own case of *Sanders v. Railway.* 97 S. C. 52, 81 S. E. 283, and in the very recent cases of Ross v. Hines, 217 Mich. 226 185 N. W. 721, and *Maher v. St. Louis & S. F. Ry. Co.* (Mo. App.) 234 S. W. 1037.

The next question is, was the train engaged in interstate commerce, or, stated in another way, was there evidence to submit to the jury upon the question of whether or not the train was engaged in interstate commerce?   The evidence of plaintiff in support of the contention that the train was so engaged rests upon the evidence and records of the company, which show that the train in question delivered that day to one of the manufacturing enterprises a carload of material from Amesbuy, Mass., and to the cotton compress company a carload shipment from Mayesworth, N. C.   As to the Amesbury car, the conductor said:

"My books show that the Amesbury car was delivered to the Okey Manufacturing Company. I remember handling that car."

The record was then introduced, showing that the car was placed on July 29, 1919. From the conductor's books dated July 29th, 1919, the showing was:

"Cars delivered to Okey Manufacturing Company, initials I. M. No. 34353 kind B; to Compress Company, initials D. A. P. No. 31224, kind B."

The testimony later developed showed that the car I. M. No. 34353 came from Amesbury, Mass., and that the car D. A. P. No. 31224 came from Mayesworth, N. C. The testimony is not positive as to whether the Mayesworth car was in the train at the time of the injury, but the testimony is susceptible of the inference that it was. It seemed to be clearly established, so for as the Amesbury car be concerned, that it had arrived several days previously under an "order notify" shipment, and that it had been placed on a track until the draft should be paid, after which time it could be delivered. The conductor testified:

"The reason I placed it [the Amesbury car] out there was until we could get the O. K. from the agent to place it for delivery, so I could handle it when he was ready. We got the O. K. that day, and I placed it out there at their place of business after Mr. Thornhill was killed."

The custom of operating the train in question, which was a shifting train, delivering cars to various manufacturing concerns, was to take the train out about 10 o'clock in the morning and to continue at work in which it was engaged until 6 o'clock in the afternoon, with the exception of a period of about 20 minutes, when the actual running of the train ceased so that the crew might eat dinner.

The Amesbury car was in what was known as "the Monogan lead," just beyond the point of the tragedy in the direction in which the train was moving at the time.

These facts afford a sufficient basis for the conclusion that the train was engaged in interstate commerce. It was said in *N. C. R. Co. v. Zachary,* 232 U. S., 248; 34 Sup Ct., 305; 58 L. Ed., 596; Ann. Cas., 1914-C, 159:

"It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a part of interstate commerce, and the circumstance that the interstate freight cars had not yet been coupled up is legally insignificant."

The facts in relation to the car itself are analogous to the facts in *Fayssoux v. Railway Co.,* 109 S. C., 357; 96 S. E., 151, where it is said:

"The business upon which the 'plaintiff's intestate' was engaged at the moment was transferring an empty car from one switch track to another. This car was not moving in interstate commerce, and that fact was treated as conclusive by the Court of Appeals. In this the Court was in error, for if, as there was strong evidence to show, and as the Court seemed to assume, this movement was simply for the purpose of reaching and moving an interstate car, the purpose would control and the business would be interstate."

We have referred to the recent cases of *Maher v. St. Louis & S. F. Ry. Co.* (Mo. App.), 234 S. W., 1034, and *Ross v. Hines,* 217 Mich., 226; 185 N. W., 721. The matter of whether or not interstate commerce was being engaged in at the time of the injury was under consideration. In the first of these cases the Court in part says:

"Without going into the multitude of cases of the Federal Courts on this matter, and particularly those of the United States Supreme Court, we think it sufficient to refer to that of *Shanks v. Delaware, Lackawanna & Western Ry. Co.,* 239 U. S., 556, especially to that part of it commencing at page 559; 36 Sup. Ct., 188; 60 L. Ed., 436; L. R. A., 1916-C, 797, on which counsel for both parties relied. Applying the tests which were there used to determine what is interstate commerce * * * we think that this one at

bar comes within the rule there announced, although no case just like the one before us is presented. This machine was, in fact, at the time and place, a part of an interstate commerce shipment, temporarily halted at St. Louis on its way to its ultimate destination in another State. But it was as much a part of that transportation as if on the train in actual transit. * * * It was as much on its way as an interstate shipment as if actually in the car, or about to be put in the car for interstate shipment. We can take no other view of it, under the decisions of the Supreme Court of the United States and of our own State, than that this machine at the time constituted a part of interstate commerce, and that plaintiff was injured while engaged either directly in interstate transportation, or, certainly, in work 'so closely related to it as to be practically a part of it.' "

And in the latter case the Court says:

"A great many fine distinctions have been indulged in by the Courts in determining whether commerce was interstate or intrastate, but we have little hesitancy in saying that the cars which plaintiff's intestate and his companion intended to move when the accident occurred were interstate commerce. The cars had come into the State from a foreign State on an errand of interstate commerce on a railway engaged in interstate commerce. They were loaded with interstate freight. They had not reached their destination, and would not until the cars were rearranged in other trains and taken to the City of Detroit and delivered to the consignee. *Rich v. Railway,* 166 Mo. App., 379; 148 S. W., 1011; *Barlow v. Railway,* 158 App. Div., 768; 143 N. Y. S., 1053; *Montgomery v. Railway,* 64 Or., 597; 131 Pac., 507; 47 L. R. A. (N. S.), 13; *S. A. L. Ry. v. Koennecke,* 239 U. S., 352; 36 Sup. Ct., 126; 60 L. Ed., 324. *Koennecke v. Railway,* 101 S. C., 108; 85 S. E., 374."

In view of the fact that the testimony made a clear issue as to whether the Mayesworth car, an interstate car, was

actually a part of the shifting train at the time, which car was subsequently delivered that day to the consignee, coupled with the further fact testified to that the train was going in the direction of the Amesbury car, an interstate car, at the time of the injury, we fail to see, in the light of the authorities cited and quoted from, how the trial Judge could have sustained either the motion for nonsuit or direction of verdict on the grounds made, and the exceptions are accordingly overruled.

The further objection made was that the act has no application to the Director General as an "interstate common carrier." In spite of the ingenious argument of counsel for appellant, we are not impressed with this position. It is that—

The Director General of Railroads "was operating the Southern Railway, and other railroads of the United States, for the benefit of the Government during the time of war, and therefore the Federal Employer's Liability Act has no application whatsoever, as the plaintiff's deceased was employed by the Director General of Railroads and not by any common carrier; that the Southern Railway Company as a carrier had been completely put out of business, and that no corporation or company had any control over the said railroad system in which plaintiff's intestate was injured, but that the track and the engine and cars in use at the time of the intestate's death were controlled by the United States Government under the direction of the Director General. That therefore, the statute in question had been suspended and was of no force at the time plaintiff's intestate met his death."

In presenting this view, sight is lost entirely of the provision made by Congress subjecting carriers while under operation by the Director General "to all laws and liabilities as common carriers whether arising under State or Federal laws or at common law." Act of March 21, 1918 (U. S.

Comp. St., 1919; U. S. Comp. St. Ann. Supp., 1919, §§ 3115¾a-3115¾p).

While the people of the common country in the defense of their liberties put behind them the thought of State lines, they nevertheless existed under the Constitution, and it remained as true as formerly that the carrying of goods across the border of one State into another State constituted interstate commerce, whether the carrier was being so operated under the control of the Director General of Railroads or not. ·

What has been said disposes of all of the exceptions except the nineteenth and the undisposed of related questions raised by the twenty-second and twenty-third exceptions which relate to the verdict. We will now give attention to those exceptions. The jury returned a verdict in the following form:

"We find for the plaintiff:

| | |
|---|---:|
| Annie Thornhill, Admx | $ 2,250 00 |
| Roy Thornhill | 2,250 00 |
| Annie Thornhill | 2,400 00 |
| William Thornhill (baby) | 2,700 00 |
| William Thornhill (deceased) actual damages. | 4,000 00 |
| For mental and physical suffering | 1,000 00 |
| | $14,600 00" |

The Court ordered the jury to return to their rooms and reform the verdict, so as to apportion the entire damages among the plaintiff and the children in accordance with the instructions which he had previously given as follows:

"You are to allow each one separately what he would receive, and for that reason you are required to apportion your verdict. In other words, the form of the verdict, if you find for the plaintiff at all in this case, would be, 'We find for the plaintiff as administratrix so many dollars,' writing it out in words and not in figures, 'to be appor-

tioned as follows.' Then you set out how much the wife is to have, how much each child by name is to have.

"And you are to apportion what you allow for the pain and suffering of the deceased in that cause of action. You will apportion that in just the same way, you will add it in a general aggregate before you apportion it and apportion it all in one, in one verdict. That is to say, you are to add what she would be entitled to for pain and suffering for her husband, not what she endured, not the pain and suffering which the children endured, but what was their financial loss, is the only thing which you are to consider as to that, except as to the cause of action for suffering of the deceased, that is to be apportioned in the same way that you apportion the other. Then, you just add that to the aggregate, one sum to the other, and apportion that among the wife and children according as the evidence shows, that the plaintiff shows, should be the proportion."

After being instructed to return to their rooms and reform the verdict the jury then returned and rendered a final verdict, which was accepted by the Court as follows:

| | |
|---|---|
| Annie Lou Thornhill | 3,650 00 |
| Roy Thornhill | 3,500 00 |
| Annie Lou Thornhill | 3,650 00 |
| William Thornhill | 3,950 00 |
| | $14,600 00 |

No exception was taken to that part of the charge which we have quoted, and under which the jury was instructed as to the form in which they should render a verdict in case they should find for the plaintiff on both causes of action, nor was any objection noted to the form of the verdict when rendered. In the case of *McAlister v. Thomas & Howard Co.*, 116 S. C., 319; 108 S. E., 94, it was said by Mr. Chief Justice Gary:

"It was the duty of the defendant's attorney to call attention to the form of the verdict, when it was published.

By failure to do so he waived the right to raise the question by this exception. *Rhame v. City of Sumter,* 113 S. C., 151; 101 S. E., 832."

The jury must necessarily follow the instructions of the Court in the form in which the verdict is rendered. The jury having been instructed as to the form, and no exception being made to the charge of the. Judge with regard thereto, and attention not having been directed to any matter connected with the form of the verdict when rendered, such objection cannot be made here for the first time. In connection with these exceptions, the amount of the verdict is brought in question. It certainly cannot be said that the verdict, in any view, as a matter of law, is excessive.

All exceptions are overruled, and the judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICES WATTS, FRASER, and MR. ACTING ASSOCIATE JUSTICE JAMES H. FOWLES, concur.