## HICKS v. SOUTHERN RY.

1. REHEARING.—Where a rehearing generally has been ordered upon petition asking for a rehearing on one point only, the whole case is opened for argument.

2. APPEAL.—Question not made before trial Judge on motion for nonsuit will not be considered on appeal.

3. NONSUIT.—Where an order refusing a motion for nonsuit was erroneous, but the defendant offered evidence which entitles plaintiff to have the jury pass on the case, this Court will not reverse the order.

4. APPEAL—EXCEPTION—EVIDENCE.—A general objection to evidence on trial will not be sustained here upon exceptions making grounds not presented to the trial Judge.

5. EVIDENCE—PLEADING.—Testimony responsive to allegations permitted by non-action to remain in a pleading, is competent.

6. MASTER AND SERVANT.—Information given the servant, not within the scope of his duties, if shown to have been communicated to the master, is binding on him.

7. EVIDENCE.—To make admission of irrelevant testimony reversible error, it must be shown to have been material.

8. IBID.—OPINION—EXPERT—ENGINEER.—A non-expert witness cannot give an opinion as to the competency of an engineer unless he states the facts upon which his opinion is based.

9. IBID.—REFRESHING MEMORY—BOOKS.—A CAR INSPECTOR can only use his book of entries as to the condition of cars to refresh his memory. The book itself cannot be put in evidence.

10. FELLOW-SERVANTS.—Instruction as to doctrine of fellow-servants held not prejudicial to defendant.

11. IBID.— INCOMPETENT SERVANT— NEGLIGENCE— DEFENSE.— Employment of an incompetent servant is *prima facie* evidence of negligence

which a fellow-servant does not assume. Want of knowledge of incompetency is a defense.

12. IBID.—MASTER AND SERVANT—FLAGMAN.—A CONDUCTOR on one train occupies the relation of fellow-servant to a flagman on another train, but that of master to a flagman on his own train. MR. JUSTICE GARY *doubting the latter.*

13. REQUEST.—Not error to refuse a request to which there is no testimony applicable.

14. REHEARING refused.

Before BUCHANAN, J., Newberry, February, 1900. Affirmed.

Action by Coleman Hicks against Southern Railway Co. From judgment for plaintiff, defendant appeals.

This case was first argued during the November term, 1900, and opinion filed reversing the Circuit judgment. Upon petition for rehearing by plaintiff, respondent, on *only one point,* rehearing was ordered. Upon the argument during November term, 1901, the respondent made the point that only the one point was open for argument. *Held,* that upon order for rehearing generally, the whole case is open for argument.

*Mr. T. P. Cothran,* for appellant, cites: *Whether an engineer and flagman are fellow-servants while performing the duties ordinarily assigned them, is a question of law:* 51 S. C., 96. *Master is only responsible for incompetency of servant when he has actual knowledge of it, or should have known from his long service:* 25 S. C., 135; Bus. Pres. Inj., sec. 198; 55 Mich., 437; 27 N. E. R., 1042; 173 P. St., 228; 59 N. Y., 356. *As to proof of defective appliances:* 34 S. C., 216; 21 S. C., 93. *Duty of master in furnishing appliances:* 34 S. C., 314; 15 S. C., 456. *As to failure to furnish medical attention:* 27 S. C., 76. *Lack of medical attention could not be shown by declarations of the crew:* 27 S. C., 63. *Car inspector's book is original evidence:* 2 Jones Ev., secs. 323, 324; Green Ev., sec. 115; 2 N. & McC., 332; 14 S. C., 450. *Doctrine of fellow-servants should not be limited to*

*those engaged in the same department of work:* 15 S. C., 455; 13 Rich., 210. *The employer does not guarantee to each servant that his colaborers are men of ordinary care and prudence:* 25 S. C., 135; 42 S. C., 472; 15 S. C., 443; 18 S. C., 262; 23 S. C., 526; 149 U. S., 386. *Proof of incompetency of a servant is not presumptive of knowledge of the fact in the master:* 25 S. C., 135; 15 S. C., 456; 107 U. S., 454; 123 U. S., 719.

*Messrs. Johnstone & Welch,* contra, cite: *Whether conductor, engineer and plaintiff occupied the relation of fellowservant, is a defense and question of law and fact:* 51 S. C., 92; 78 N. W. R., 359; 40 S. W. R., 442; 172 Ill., 601; 5 Rap. and Mack's Dig. of Ry. Law, 790, secs. 511, 513; 106 Ill., 216; *and cannot be considered on motion for nonsuit:* 19 S. C., 20; 29 S. C., 319; 58 S. C., 417; 42 S. C., 469. *It is duty of master to keep air brakes in repair, and car inspector is vice principal:* 5 Rap. and Mack's Dig. of Ry. Law, p. 730, par. 222, and p. 731, pars. 225, 226; 3 Ell. on Ry., p. 2088, par. 1327. *Do facts show a lack of care? if so, nonsuit is improper:* 34 S. C., 214; 25 S. C., 189; 38 S. C., 208; 96 Am. Dec., 552; *also, if plaintiff's statements were contradictory, inconsistent or unworthy of belief:* 42 S. C., 466; 26 S. C., 189. *Plaintiff is not required to show knowledge of master of incompetency of servant affirmatively:* 35 S. C., 408. *Lack of knowledge is a matter of defense:* 35 S. C., 408. *As to duty of appellant to furnish medical aid:* 96 Am. Dec., 552. *Exception cannot raise objection not made at trial:* 8 Ency. P. & P., 218 to 228. *Conductor should have procured medical attention:* 96 Am. Dec., 552. *Error in admitting evidence is cured by admission of same kind without objection:* 53 S. C., 258. *Any evidence responsive to allegations in the pleadings is admissible:* 36 S. C., 263. *Custom of employees is admissible to negative negligence in employee:* 133 Ind., 265; 58 N. Y., 56; 67 N. Y., 593; 25 N. W. R., 104; 72 Wis., 199; 14 Allen, 448; 34 Ala., 169; 22 Ore., 202; 2 Conn., 9; 12 Cal., 535. *Non-expert witness*

36—63

*can only testify as to facts:* 7 Ency., 1 ed., 509; 9 Ency., 2 ed., 492. *Car inspector's book is not competent evidence here:* 39 Ohio, 327; 77 Ind., 110; 9 Ency., 2 ed., 895 (f.) 918; 1 Bay, 331; 2 Bay, 172; 4 McC., 76; 2 Brev., 127; 3 Brev., 251; 1 Hill Eq., 285. *Master must employ competent servants:* 18 S. C., 262; 39 S. C., 507; 3 Ell. on Ry., p. 1996, par. 1267. *Defective machinery and incompetent servants are proof prima facie of breach of duty:* 34 S. C., 214; 35 S. C., 409. *As to contributory negligence as a proximate cause:* 56 S. C., 91. *Charge as to fellow-servants correct:* 51 S. C., 96. *Doctor called in by master must be competent:* 1 Ell. on Ry., p. 318, par. 223; 3 Ell. on Ry., p. 2162, par. 1389.

Supplemental argument on rehearing: *When can injured servant recover of master, where injuring servant is his fellow-servant:* 12 Ency., 2 ed., 909 to 922; 5 Rap. and Mack's Dig. Ry. Cas., p. 694, par. 132, to page 707, par. 162; 3 Thom. on Neg., 794; 25 S. C., 135; Pat. on Ry. Acc. Law, 315, par. 295; 81 Tex., 517; 109 Ill., 314. *What must injured servant prove to recover for injury from incompetent servant:* 35 S. C., 406; 3 Ell. on R. R., p. 1996, par. 1267; 107 U. S., 454; 58 Tex., 276; 13 Gray., 440; 15 S. C., 457; 35 S. C., 405; 32 N. E. R., 881; 31 Pac., 283. *How is knowledge of incompetency on part of master proved?* 25 S. C., 135; 34 S. C., 214; 35 S. C., 407; 26 S. C., 52. *Proof of injury raises a presumption of negligence:* 9 Rich. L., 89; 55 S. C., 389.

The opinion in this case was filed January 24, 1902, and remittitur stayed on petition for rehearing until

April 18, 1902. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action to recover damages for personal injury sustained by the plaintiff, on the 5th of November, 1895, by reason of alleged negligence on the part

of the defendant, while in its employment as brakeman, and doing duty as flagman. The complaint alleges that the plaintiff, after flagging the train, boarded it, and just as he did so, a sudden jerk was made which snatched his foot off the step and caused it to be run over by the wheels of the car. He alleges negligence on the part of the defendant in the following particulars: 1st. In suddenly jerking the train when the plaintiff had just boarded it and when it was aware of his position. 2d. In its failure to provide medical attention at Batesburg, and requiring him to wait till he was carried to Columbia before he was treated. 3d. In employing an incompetent engineer and conductor for the duties each was to perform on that occasion; and 4th. In the use of defective machinery.

After denying the material allegations of the complaint, the defendant set up the following defense: "Defendant further says: It was not the duty of the plaintiff to board, or attempt to board, passenger train No. 37, on the 5th of November, 1896, in the way and at the time he attempted to do so; and that the injury he complains of was caused by his failing to remain on the ground and perform his duty in flagging a train which was following passenger train No. 37, and by his carelessness in attempting to get on board of a moving train at a time when it was not necessary to do so under circumstances that rendered it dangerous, or else, by the act of a fellow-servant, for which defendant is not responsible."

The appellant's attorney states that the following facts are not in dispute: "The plaintiff, Coleman Hicks, was a flagman on a freight train, *en route* from Augusta to Columbia, on November 5th, 1895. The train was a long one, some thirty-five cars, besides engine and caboose. One Blanton was conductor. When the train reached Batesburg, it was found that the side track was too short to contain the whole train, and it was headed in on a side track, the engine and a number of cars resting on the side track and a number of cars and the caboose resting on the main line. Being very

nearly on the time of the west bound passenger train No. 37, and in the manner described obstructing the passage of the passenger train, the conductor sent the plaintiff forward. almost half a mile to flag the passenger train and inform the engineer and conductor of that train that the freight train was 'swinging' at Batesburg. This term in railroad parlance expresses the position at the time occupied by the freight train. The purpose was to allow the passenger train to pull down on the main line near the west switch, stop and allow the freight train to proceed out of the east switch, then shift the switch at the west end and allow the passenger train to proceed. The plaintiff obeyed his instructions; he ran down to the blow post, about half a mile, signalled the engineer that the freight train was 'swinging,' and as the passenger train slowed up in obedience to the signal and was passing the plaintiff, he ran alongside of it for a short distance and made an effort to board it for the purpose of riding back to Batesburg. According to his statement, the passenger train was then going at the rate of about six or eight miles an hour, the rate at which the employees were in the habit of boarding trains. Plaintiff had his flag in his right hand and was much exhausted by his run; he was on the right side of the train approaching Batesburg; he caught the hand railing at the front platform of the Pullman car with his right hand, and in the effort to board it, in some way slipped, and his left foot resting on the rail was crushed by the wheels. He threw himself away from the train and fell into the ditch, where he stayed for half an hour, until an extra freight train came along and carried him to Batesburg, where his foot received some attention, and thence he was carried to the hospital in Columbia. There his foot was amputated." The jury rendered a verdict in favor of the plaintiff for $2,350.

The defendant appealed upon exceptions, the first of which is as follows:

"I. *The Motion for Nonsuit.* The presiding Judge erred in not granting defendant's motion for nonsuit upon the

ground that there was no evidence of negligence on the part
of the defendant, as charged in the complaint.

"(a) The alleged negligence in suddenly jerking the
train, when defendant was aware of plaintiff's position, was,
if any, the negligence either of the conductor or the engineer
of the passenger train, both of whom were fellow-servants of
the plaintiff, for which the defendant was not liable.

"(b) There is no evidence that the servants of the defend-
ants were aware of the dangerous position of the plaintiff,
or of his intended effort to board the passenger train.

"(c) There is no evidence that the jerk in the train was
an act of negligence, or anything more than the ordinary
and incidental movement of the train.

"(d) There is no evidence that the engineer of the pas-
senger train was an incompetent officer, or that the injury to
plaintiff was the result of such incompetency, or that the
company was negligent either in employing him or retaining
him after it knew, or had reason to know, of his incompe-
tency.

"(e) There is no evidence that the conductor of the pas-
senger train was an incompetent officer, or that the injury to
plaintiff was the result of such incompetency, or that the
company was negligent either in employing him or retaining
him after it knew, or had reason to know, of his incompe-
tency.

"(f) There is no evidence that if any of the appliances,
attachments and running gear of the passenger train were
unsafe, unsound and unreliable, or that the plaintiff's injury
was caused thereby, or that the defendant knew, or had
reason to know, of such condition.

"(g) There is no evidence that the defendant failed in its
duty to furnish medical attention to the plaintiff, or that his
injury was either caused or increased thereby.  Sec. 1690,
Revised Statutes, requiring notice to be given to a physician,
has no application to an action for damages resulting from a
personal injury such as this is."

The grounds upon which the defendant made a motion for

a nonsuit are thus stated in the record, together with the reasons for refusing it: "Mr. Sanders: We move for a nonsuit on the ground that there is not sufficient evidence of the allegations in the complaint to go to the jury. The allegations are briefly that the engineer and conductor were careless and incompetent, that the machinery and appliances were out of order, and that the railroad company was negligent in that respect, and that by reason of the negligence of the railroad company in having an incompetent engineer and conductor there, or by having this machinery out of order, this man when he undertook to board the train, the train gave a sudden jerk and his foot slipped and was crushed. Taking the first proposition in this case, the plaintiff and employees of the train were fellow-servants, and the plaintiff must show that the master was negligent in the employment of the conductor and engineer at first, or negligent in retaining such in the service.

"By the Court: I cannot say there is no scintilla of evidence here. There is testimony as to an instance of alleged incompetency before the accident occurred which, if believed, may be some evidence of negligence or carelessness, and there are one or two instances after it occurred from which the jury might presume that the servant was the same kind of man that he was before. Isn't that a presumption for the jury? I don't think I ought to take the case from the jury." The exception presents some questions upon which the Circuit Judge was not requested to rule, and these cannot be considered. One of the provisions of Rule XVIII. is that "a motion for a nonsuit must be reduced to writing by the moving counsel or by the stenographer under the direction of the Court, stating the grounds of the motion." His Honor, the Circuit Judge, understood the defendant's motion to be made on the ground that there was no testimony tending to show that the defendant was negligent in the selection of the conductor and engineer, or in retaining them in its service, the defendant contending that they were fellow-servants with the plaintiff. Even if there was no testimony whatever

to sustain the allegation of negligence in this particular, it does not follow that the defendant was entitled to an order of nonsuit. There were four specific acts of negligence set forth in the complaint, and as there was testimony in support of each of them, a nonsuit would not have been proper, even if it should be held that the grounds of the motion were applicable to each specification of negligence. But if there was a failure of evidence to sustain the allegations of negligence at the time the motion for a nonsuit was made, and afterwards, when other testimony was introduced, it made a case proper for the consideration of the jury, the Supreme Court would not set aside an order refusing a motion for nonsuit, although erroneous when made. *Scates* v. *Henderson,* 44 S. C., 554. In the case of *Martin* v. *Ranlett,* 5 Rich., 546, the Court uses this language: "It was said in the case of *Thomas & Ashby* v. *Jeter & Abney* (1 Hill, 382), as follows: 'Even if the presiding Judge had erroneously refused the nonsuit and the defendants in their defense had supplied the proof necessary to make out the plaintiff's case, a nonsuit could not be directed here * * * and when, upon the whole proof, it appears that the plaintiffs are entitled to recover' (and we may add, when the jury have ratified it), 'it would be sporting with justice to say they should be turned out of Court on account of such an order of the Judge.' " We are satisfied that in view of all the testimony such a case was made out as entitled the plaintiff to the right to have the jury pass upon it. This exception is overruled.

"II. *Questions of Admissibility of Evidence.* The presiding Judge erred in allowing and rejecting testimony in the several particulars hereinafter specified.

"(a) In allowing the witness, Coleman Hicks, to testify that after the accident happened, Conductor Blanton said that the crew of the passenger train did not tell him anything about it. The error consisting in this: A part of the plaintiff's action for damages is injury by neglect after the servants of the company became aware of the accident. This

they sought to establish by the declarations of the agent, Blanton, not a part of the *res gestae* nor made within the course or scope of his agency.

"(b) In allowing the witness, Coleman Hicks, to testify as follows: 'Dr. Fox told me that if I would let him operate on my foot, he could save my great toe and the toe next to it— that is, with trimming the foot; he pointed trimming the right foot across this way, leaving out behind the little toe. He first told me, before I got an answer, that if I didn't let him do it, that my foot would have to be unjointed in here, with what they call a         operation, if I didn't let him do it.' The error consisting in this: Such testimony was hearsay, the expression of opinion by one not an agent of the company, and not a part of *res gestae*.

"(c) In allowing the witness, Coleman Hicks, to testify that he had repeated to Conductor Blanton what Dr. Fox had said in reference to saving a part of his foot. The error consisting in this: It was a conversation between the witness and an officer of the company whose duties did not require any report or action based upon such information, it was not a part of the *res gestae*.

"(f) In allowing the witness, J. H. Green, to answer upon cross-examination the question, 'Did you ever know in a lawsuit, a suit for damages, a railroad admit that it had incompetent employees in its employment?' Said testimony being irrelevant, incompetent and calculated to prejudice the minds of the jury against the defendant.

"(g) In refusing to allow the witness, William Maxwell, to answer the question: 'Do you know whether or not he (McAllister) was a careful engineer?' and in holding, 'I think he is confined not to the conclusion but to the evidences of the care or of the reverse, any dereliction in his duty.' The error consisted in this: The complaint alleged that the engineer was incompetent and known by the company to be so; this was denied by the answer, and, therefore, became an issue in the case upon which the testimony should have been allowed, without requiring proofs of specific acts of care.

And for the same reason, in striking out the answer of the witness as follows: 'Well, as far as his handling of an engine in the yard, I would say he was a very careful'—and 'all of his handling around indicated a careful engineer;' and in holding: 'You are confined to acts, acts showing that he was careful.' It is submitted that if a witness is qualified to judge of the competency of an engineer and was in a position to so judge, it is proper for him to state from his standpoint whether the engineer is competent or not, without being confined to specific acts of care or want of care.

"(h) In refusing to allow in evidence the book of the car inspector, showing original entries made by him as to the condition of the cars examined, and in holding that such book could not be introduced as original evidence, and in striking out such evidence."

"(a)" *Assignment of Error.* This question arose out of the testimony of the plaintiff as follows: "They picked me up and put me on a flat car; the conductor, engineer, fireman and train hand picked me up and put me on a flat car and carried me into Batesburg. When I got in there, I hopped down off the flat car with the aid of the train hand and went across and jumped up on the platform. Mr. Blanton came around and says: 'Hicks, do your work.' I says, 'I am not able to do any work; them fellows run over me up yonder.' He says: 'Run over you?' I says, 'Yes.' He says: 'They didn't tell me anything—' (Objection to conversation by Mr. Schumpert.) That was Mr. Blanton, your own conductor? Yes, sir. By the Court: I rather think that ought to be admitted. 'Go ahead. Mr. Blanton says: 'They didn't tell me anything about it.' " It will be observed that the defendant's attorney interposed a general objection to the "conversation," but did not specify the grounds of objection. The grounds of objection stated in the *exception* were not ruled upon by the presiding Judge, and is, therefore, not properly before this Court for consideration. *Norris* v. *Clinkscales,* 59 S. C., 243.

"(b)" *Assignment of Error.* The record contains the fol-

lowing statement: "The case was first tried before Judge
Gage. At that trial, after the complaint was read, Mr.
Sanders, for defendant, in pursuance of written no-
tice, moved to strike out the following allegation in
paragraph VII. of the complaint: 'Although the
plaintiff clearly remembers, and he so alleges, that a doctor
was at hand, who said that he could save plaintiff's great
toe.' By Mr. Johnstone: 'The motion comes too late, after
the framing of the issues and the empanelling of the jurors.'
By the Court: 'I think the motion ought to have been made
beforehand.' This motion was not renewed or called up at
the second trial." The object of the pleadings is to frame
issues so that the parties to the action may know how to
shape their testimony. The testimony mentioned in this
assignment of error was responsive to an allegation which
the defendant had allowed to remain in the complaint by its
non-action. It, therefore, had no right to object to such tes-
timony. Furthermore, the grounds of objection set forth
are not those urged before the presiding Judge.

"(c)" *Assignment of Error.* This question arose as fol-
lows, during the examination of the plaintiff: "Were the
officers of the company around there? No, sir, there wasn't
no one of the company, not as I know of; there were
none of them there as I know of at that time. Did
you tell them of it when you saw them? I told Mr.
Blanton about it when he came back there, my conductor.
What did you tell him? Mr. Sanders: It is a conversation
between him and Mr. Blanton, who is a conductor, and not
an officer of the company, an hour afterwards. It is not
competent; the principal is not bound by what the agent
says, but by what he does. By the Court: I think he may
show what he did or what he omitted to do. The allegation
in the seventh paragraph of the complaint speaks of his
wounded condition, and says a doctor was at hand and said
he could save plaintiff's great to. He may show the omis-
sion as well as what was done. Was the agent, Mr. Blan-
ton, of this company, informed of what the doctor said? He

was.   Mr. Schumpert: Your Honor rules that he can say that the agent was informed?   By the Court: With refer- ence to what the doctor said, as alleged here in the complaint in the seventh paragraph, as to the saving of his great toe. What was done after Mr. Blanton received this information of what Dr. Fox had told you?   Mr. Schumpert: He is going on and speaking about some information; what infor- mation.   What did he say when he was so informed?   He had the operator wire Mr. Wells and ask him if these doctors could operate on me.   (Objection by Mr. Schumpert.)   By the Court: No, the conductor is an agent with certain duties, and all his admissions go upon the ground of the scope of his employment."   This testimony was not objected to, on the ground that it was not a part of the *res gestae,* but on the ground that the conductor was not the proper person to whom the information should have been given.   As the tes- timony shows that the conductor communicated with the superintendent after receiving the information, we fail to see wherein the testimony was prejudicial to the defendant.

"(d)" and "(e)," assignments of error, were abandoned.

"(f)" *Assignment of Error.* The record shows this ques- tion arose as follows: "Cross-examination by Mr. John- stone: Did you ever know in a lawsuit, a suit for damages, a railroad admit that it had incompetent employees in its employment?   Mr. Schumpert: I object; it is irrelevant, incompetent.   By the Court: Oh, yes; he might answer that.   The Southern Railway Company, did you ever know the Southern Railway Company to admit in any law case where it was sued for the negligence of its agents, that it had incompetent employees or negligent em- ployees in its service?   No, I don't think I have."   Even if the testimony was irrelevant, we fail to see wherein it was material, which fact would have to appear before this Court would sustain the exception.   We cannot believe that a juror possessed of ordinary reason would be influenced in his finding of a verdict by the fact that the witness knew, or did not know, that the defendant had ever admitted in any

law case where it was sued for negligence, its employees were incompetent or negligent. Furthermore, the exact question propounded to the witness was not answered.

"(g)" *Assignment of Error.* At the time the presiding Judge made his rulings, there was no testimony showing that the witness was an expert, nor the facts upon which he based his opinion. The testimony was, therefore, inadmissible. *Price* v. *R. R. Co.,* 38 S. C., 212-213; *State* v. *Lee,* 58 S. C., 350. But even if there had been such testimony, he could not have testified as to the competency of the engineer, because this was an issue raised by the pleadings, in which case the witness could only give his opinion upon a state of facts hypothetically stated. The rules as to opinion evidence are stated in the case of *Easler* v. *Ry. Co.,* 60 S. C., 117, recently filed.

"(h)" *Assignment of Error.* The witness was allowed to refresh his memory by reference to the entries made in the book by him, and he testified that there were no defects in any of the coaches attached to the train that injured the plaintiff on the day the accident happened. The presiding Judge very properly drew the distinction between such evidence simply for the purpose of refreshing the memory, and when introduced as evidence in itself of the facts therein appearing. The book was not admissible as independent evidence, and this was the only testimony which the presiding Judge excluded relative to the book. The presiding Judge is sustained in his ruling by the cases of *State* v. *Collins,* 15 S. C., 373, and *Fritz* v. *Burriss,* 41 S. C., 149. This exception is overruled.

The third exception is as follows: "III. *Exceptions to the Judge's charge.*

"(a) The presiding Judge erred in charging the jury as follows: 'Well, the law of fellow-servants is this: That in the same department of work where yourself and another are engaged in service, same department of work, he does not occupy to you the relation of master * * * there where you are injured as the result of negligence or lack of care of a

fellow-servant, then you cannot recover, if it is done in the ordinary employment and acting as such fellow-servant.' The error consisting in limiting the doctrine of fellow-servants to servants engaged in the same department of work.

"(b) The presiding Judge erred in charging the jury as follows: 'An employer undertakes and contracts that his men are men of ordinary care and prudence.' There is no such contract on the employer's part. His duty is to exercise ordinary care in the selection of his employees, and not to retain them after he knows or has reason to know of their incompetency.

"(c) The presiding Judge erred in charging the jury as follows: 'If it be proved that one is incompetent, you may infer that he is incompetent to the knowledge of the person who employed him, unless, when that condition of affairs was established, he comes forward and shows that he did not have that knowledge. * * * If you have once established the fact that a person is incompetent, then that being a *prima facie* case, you may stop there. Then the defendant putting up his defense would have to say that while that may be so, yet I did not know it; but he takes upon himself the burden of proving that lack of knowledge * * * When it is once established that a man is incompetent, a servant is incompetent in the service of the master, you have a right to infer, you have a right to presume, and it is presumed, that he is incompetent to the knowledge of the master * * * The presumption is that he is incompetent to the knowledge of the person who employed him.' The error consisting in holding that there was a presumption upon the proof of incompetency of a servant, that the master knew of it.

"(e) The presiding Judge erred in qualifying defendant's first request to charge. The request was as follows: 'A conductor upon one train, while engaged in his ordinary duties, is a fellow-servant of a flagman upon another train.' The modification was as follows: 'I so charge you that. That means to say, while engaged in the relationship or duties of conductor and flagman, respectively; but as I have

charged you heretofore, if one is placed above the other so as
occupy towards the other the relationship of master and
servant, beneath him for the moment, and for the time
throwing aside the relationship that the conductor ordina-
rily bore towards the flagman or that the flagman bears to-
wards the conductor, for the man so placed above another so
as to act for the principal and as principal, as master, then
the master would be responsible.' The error consisting in
this: The defendant was entitled to the charge as presented;
there was not a particle of testimony which made the modifi-
cation applicable; it was, therefore, misleading and prejudi-
cial to the defendant.

"(f) The presiding Judge erred in refusing the defend-
ant's fifteenth request to charge, which was as follows: 'Even
if the defendant was, under the law, obliged to call a doctor
to attend the plaintiff; if, as a fact, they did call a doctor,
then the company did its duty in this respect, and cannot be
held liable for the mistake of the doctor.' The request con-
tained a correct principle of law applicable to the case, and
the defendant had the right to have it charged to the jury."

"(d)" was abandoned.

"(a)" *Assignment of Error.* The meaning of the pre-
siding Judge is more apparent when his words are quoted
more fully, which were: "Well, the law of fellow-servant is
this: that in the same department of work, where
yourself and another are engaged in service, same
department of work, he does not occupy towards you
the relation of master or superior officer, representing a prin-
cipal, and you do not represent towards him that you con-
tract with reference to each other's skill and care, there
where you are injured as the result of negligence or lack of
care of a fellow-servant, then you cannot recover, if it is
done in the ordinary employment and acting as such fellow-
servant." We do not see how this charge was prejudicial to
the appellant, as the presiding Judge stated that the plaintiff
could *not* recover, under the circumstances therein men-
tioned.

"(b)" *Assignment of Error.* The entire sentence in which the words in this assignment of error were used is as follows: "An employer undertakes and contracts that his men are men of ordinary care and prudence; that men are competent, etc.; not the highest degree of competency, not the lowest degree of competency, but are men of ordinary competency and of ordinary care, as are engaged in that particular calling, and have the amount of that care that a man of ordinary prudence would exercise; they are responsible, provided they knew of such lack of competency." As the defendant's liability was made to depend upon its knowledge of the fellow-servant's incompetency, the error was not prejudicial.

"(c)" *Assignment of Error.* It is the duty of the master to furnish his servants with safe and suitable machinery and appliances, to enable them to perform the work for which they are employed, and to keep the same in repair. It is likewise the duty of the master to select competent servants to do the work for which they are employed. It is true, a servant assumes the risk ordinarily incident to his employment, such as arise either from the handling and use of the machinery or from the negligence of a coservant; but he does not assume risks arising from defective machinery or from the selection of incompetent servants. The case of *Branch v. Ry. Co.,* 35 S. C., 405, states the principles governing cases in which an injury is sustained through defective machinery, and decides that the omission of duty to provide suitable machinery affords at least *prima facie* evidence of negligence, and that want of knowledge on the part of the master of the defect of the machinery, is a matter of defense. In *Bodie* v. *Ry. Co.,* 61 S. C., 468, recently decided by this Court, it is held that the Circuit Judge did not err in charging the jury that "the word appliances includes not only inanimate machinery and tools and apparatus, but also the living men or persons needed to operate the machinery." We see no reason why it should not be *prima facie* evidence of negligence to employ an incompetent servant as well as to

furnish defective machinery.    Nor do we see why a servant should be held to assume the risk of negligence on the part of an incompetent fellow-servant when he does not assume the risk arising from defective machinery, especially since it has been decided that the word appliances includes the persons necessary to operate the machinery.

"(e)" *Assignment of Error.* The modification states what is known as the "superior servant limitations."    12 A. & E. Enc. of Law, 1 ed., 922, *et seq.*    There are cases recognizing this doctrine, among which may be mentioned *Boatwright* v. *R. R. Co.,* 25 S. C., 133, in which the Court uses this language: "It seems to us clear that unless the conductor of a train is, while in charge of a train, the representative of the company, then the train is being run without any representative.'    He has entire charge of the train, and every employee on it is subject to his orders.    This view is sustained by the Supreme Court of the United States in the case of the *Chicago, Milwaukee and St. Paul Railway Company* v. *Ross* (112 U. S., 377), where, after reviewing the cases on the subject, Mr. Justice Field uses this language: 'We agree with them in holding (and the present case requires no further decision) that the conductor of a railway train, who commands its movements, directs when it shall start, at what station it shall stop, at what speed it shall run, and has the general management of it, and control of the persons employed upon it, represents the company, and, therefore, that for injuries resulting from his negligent acts the company is responsible.    If such a conductor does not represent the company, then the train is operated without any representative of its owner.' "    This is not the rule now recognized by the United States Supreme Court (*New England R. Co.* v. *Conroy,* 20 Sup. Ct. Rep., 85), and in the opinion of the writer of this opinion should no longer be recognized in this State; but the majority of the Court think otherwise, and until the rule is abrogated in this State, it is incumbent on him to follow the authorities sustaining it. The modification was a correct statement of the law under

the authorities now in force, and this assignment of error is overruled.

        "(f)" *Assignment of Error.* As there was no testimony tending to show a mistake on the part of the doctor, there was no error in refusing the request.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

On petition for rehearing, the following order was filed April 18, 1902:

        On examination of this petition, it fails to satisfy us that any material facts or principle of law has either been overlooked or disregarded. Hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed and the stay of remittitur heretofore granted be revoked.