17347

LUTHER D. LUNDY, Respondent, v. LITITZ MUTUAL INSUR-
ANCE COMPANY, INC., and A. B. WHITE, Defendants, of whom
the former is, Appellant

(100 S. E. (2d) 544)

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

*Walker E. Anderson, Esq.,* of Hartsville, *for Respondent,*

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

November 12, 1957.

OXNER, Justice.

This is a suit on a policy insuring respondent's dwelling against fire for a term of one year beginning February 10, 1955. The agent writing the policy, A. B. White, was joined as a co-defendant. The house was destroyed by fire on January 27, 1956. The defense was that the policy was cancelled on August 5, 1955, and the unearned premium remitted to and accepted by the insured. The trial resulted in a verdict for respondent against the insurer alone for the sum of $2,500.00, the face amount of the policy. From the judgment entered thereon, the Insurance Company has appealed.

The first question we shall determine is whether the Court below erred in refusing a motion by appellant for a directed verdict upon the ground that the policy was cancelled by the Company long prior to the loss, under the following provision:

"This policy may be cancelled at any time by this company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid

premium above the prorata premium for the expired time, which excess, if not tendered, shall be refunded on demand."

On August 4, 1955, the Insurance Company issued and mailed to respondent a check for $12.69, upon the left hand corner of which was the following notation:

"By endorsement this check is accepted in full payment of the following account

"Date                                                    Amount

"Return Premium

"Lititz Mutual

"Policy 551316 Cancelled

"August 5, 1955"

The foregoing notation correctly stated the number of the policy covering respondent's dwelling. The check was duly received by him but was not cashed until December 5, 1955. His explanation of the acceptance of this check was as follows:

Respondent carried with appellant a fire insurance policy on his store which was also written by White, appellant's local agent. Enclosed in the envelope containing the check was a notice from appellant that it was cancelling Policy No. 551318, which was the policy on the store. This notice of cancellation was introduced in evidence. Respondent was not familiar with insurance. He called White who shortly thereafter came out to his store and after looking at the policies, the notice of cancellation and the check, told respondent "this is on the store and they haven't sent you enough money back" and that "the house is all right; you ain't got nothing to worry about." He further stated: "You just keep that check for awhile because they haven't sent you enough money back and until they do if your store would get burned, they would have to pay you." Respondent held the check until the early part of December when he again saw White and inquired about the matter. White then told him that the insurance on the store had definitely been cancelled and that he, respondent, "just as well go ahead and

cash the check and try to get somebody else to write you on the store". Respondent thereupon cashed the check. He never had any further conversation with White about his insurance until after the fire. Respondent was positive that he never received any notice of cancellation of the policy on his house, and there is no evidence that the Company ever requested him to deliver up this policy.

White, as a witness for appellant, gave quite a different version. He testified that during the latter part of July respondent stopped him on the highway and told him that the policy on his house had been cancelled and inquired why the Company did so, to which he replied that he didn't know and there was nothing he could do about it. White said that several days later he called at respondent's store and compared the policy number on the check with that on the house policy and told respondent that his house insurance was cancelled. He also claimed that respondent then had in his possession a notice of cancellation of the house policy. White denied ever telling respondent that the cancellation was on the store and not on the house. He further denied having any conversation with respondent in December.

In determining whether the motion for directed verdict should have been granted, we must accept as true respondent's version of the transaction. From his testimony it appears that the Company has never sent him notice of cancollation of the house policy; that being uncertain after receiving in the same envelope the check and notice of cancellation of the store policy as to which insurance the Company intended to cancel, he called the local agent who, after examining the policy, the check and the notice of cancellation, told him positively that the house policy was not affected; and that he did not cash the check until told to do so by the local agent who then stated that the store policy had been definitely cancelled and that he had better get insurance elsewhere on the store.

It is not entirely clear from the briefs whether appellant relies on the check as being sufficient notice of cancellation

in accordance with the policy provision or cancellation by mutual consent. Aparently appellant's counsel invoke both defenses. We do not think a directed verdict could have been granted on either ground. These issues were properly submitted to the jury.

While notice of cancellation need not be in any particular form, it must be of such character as to positively and unequivocally indicate to the insured that the Company does not intend longer to be bound by the contract. 29 Am. Jur., Insurance, Section 283; 45 C. J. S., Insurance, § 450-b(1). Any ambiguity in the notice must be resolved in favor of the insured. In *Grant Lumber Company v. North River Insurance Company,* D. C., 253 F. 83, 88, the Court said: "Granted that no particular form of notice is required, still it must be shown either that the insured has actual knowledge of the insurer's intention to cancel, or that such intention has been so expressed as to give notice to the ordinary man, in the exercise of ordinary care."

Assuming that a notation of the kind shown on this check would ordinarily be sufficient to indicate an intention to cancel a policy, it could not be said as a matter of law that such a notation constituted clear and unequivocal notice where there was enclosed with the check in the same envelope notice of cancellation of another policy. The Company had printed forms for giving notice of cancellation. It would have been a very simple matter to have used one of them in giving notice of cancellation of the house policy. Instead of doing so, appellant sought to give notice by check accompanied by a formal notice of cancellation of the store policy. This was reasonably calculated to cause confusion and mislead respondent, particularly when he was assured by the local agent, after examining all the papers, that the cancellation was on the store policy. Evidently he did not think his house policy was involved because he made no effort to obtain other insurance. We cannot say as a matter of law that the respondent failed to act as a person of ordinary prudence but on the contrary, the

jury could infer that the carelessness was on the part of the Company in employing means better suited to conceal rather than to reveal its intent.

Nor can we say as a matter of law that there was cancellation by mutual consent. It is argued in appellant's briefs that long prior to the fire, respondent cashed the check with full knowledge of the notation thereon, and that after he "accepted the returned premium, the matter of notice of cancellation became immaterial." It is true that it has been held that the acceptance by insured of a check refunding an unearned premium upon which there is a notation that the policy is. being cancelled and the unearned premium returned, is a circumstance showing, or tending strongly to show, assent by insured to cancellation, or waiver by him of policy provision as to notice of cancellation. Annotation 152 A. L. R., beginning on·page 105. But here there are circumstances tending to overcome the inference of consent or waiver arising from the cashing of the check. The jury could infer that respondent was misled by the fact that the check was accompanied by notice of cancellation of the store policy and that he did not intend by accepting the check to agree to the cancellation of his house policy. As stated in *Dill v. Lumbermen's Mutual Insurance Company,* 213 S. C. 593, 50 S. E. (2d) 923, 926: 'Whether cancellation by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct and words, taken in connection with, the attendant circumstances. There must be a meeting of minds, or mutual assent, to constitute a valid cancellation, and each party must act with knowledge of the material facts."

In support of the foregoing conclusion, see *Fisher v. Globe & Rutgers' Fire Insurance Co. of New York,* 147· La. 984, 86 So. 417; *Grant Lumber Company v. North River Insurance Company, supra,* 253. F. 83.

Appellant claims that some of the evidence upon which we have. rested· our conclusion that the motion for directed verdict was properly denied was errone-

ously admitted. It is claimed that all evidence relating to the policy on the store, including the notice of cancellation, was irrelevant. We do not think so. It had a very material bearing on the question of whether the acts of the Company were reasonably calculated to confuse and mislead respondent with reference to which policy it intended to cancel. It is further urged that the statement of White to respondent to the effect that the policy on the store and not on the house was cancelled was incompetent as "an attempt to vary by oral testimony the terms of a clear and unambiguous written instrument (the check)." There is no merit in this contention. Respondent was not seeking to contradict or vary the notation on the check but offered this testimony to explain its acceptance and to rebut the inference of consent or waiver arising from cashing it. See 80 Am. Jur., Evidence, Section 337.

The final exception imputing error in the admission of evidence relates to a statement alleged to have been made to respondent by White shortly after the fire to the effect that the house policy was in force and would be paid. It is claimed that White had no authority after the loss to admit liability or waive any of the rights of the Company. It is alleged in the complaint that immediately after the fire loss, respondent demanded payment of the policy and "that defendant company's agent A. B. White then and there and at all times mentioned herein acting in the course and scope of his employment informed plaintiff that said demand and claim by plaintiff in the amount of $2,500.00 would be paid promptly and immediately by said defendant insurance company." We think the testimony in controversy was responsive to this allegation of the complaint. If appellant deemed this allegation irrelevant or prejudicial, motion should have been made to strike. Having failed to do so, complaint cannot now be made of the admission of testimony responsive to the allegation. *Hicks v. Southern Railway,* 63 S. C. 559, 41 S. E. 753; *Martin v. Seaboard Air Line Railway,* 70 S. C. 8, 48 S. E. 616; *Mauldin v. Seaboard Air Line Railway,* 73 S. C. 9, 52 S. E. 677; *Blas-*

*singame v. City of Laurens,* 80 S. C. 38, 61 S. E. 96; *Fass v. Western Union Telegraph Co.,* 82 S. C. 461, 64 S. E. 235; *Thornhill v. Davis, Director General,* 121 S. C. 49, 113 S. E. 370, 24 A. L. R. 617.

The next complaint is that the Court charged on the facts in violation of Article 5, Section 26 of the Constitution. At the conclusion of the main charge, the trial Judge, following the requirement of Section 10-1210, 1956 Code Supplement, excused the jury and asked counsel if any further instructions were desired or if there were any objections to the charge. No objection was offered by either party but appellant's counsel requested an additional instruction relating to a certain phase of the case. The jury was then recalled and the requested instruction given. After doing so, the Court gave certain other instructions which appellant now contends constituted a charge on the facts. However, in the main charge, folios 306 to 309 of the transcript, the Court gave substantially the same instructions as those now complained of. If appellant thought these instructions violated Article 5, Section 26 of the Constitution, which we are inclined to think they did, counsel should have made timely objection when the jury was excused at the conclusion of the main charge. They waived the objection by failing to do so. *Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40; *Tate v. Le Master,* S. C., 99 S. E. (2d) 39. Appellant cannot now complain of the Court's repeating substantially the same instructions to which counsel failed to object when given an opportunity to do so.

The remaining exception charges error in refusing a motion for a new trial on the ground of newly discovered evidence. Trial of the case was concluded on March 26, 1957. A motion for judgment *non obstante veredicto,* or in the alternative for a new trial, was refused the next day. About a month later appellant gave notice of motion for a new trial on the ground of alleged newly discovered evidence. This motion was based on a letter written on April 3, 1957, by Walker E. Anderson, Esq., respondent's

attorney in this action, to appellant Insurance Company. In this letter Mr. Anderson stated in substance that respondent received notice of cancellation of the store policy, dated July 25, 1955, and thereupon made demand upon White, the local agent, for refund of the unearned premium; that this demand was ignored until about February 2, 1956, when the unearned premium on the store policy was refunded. Mr. Anderson further stated that he was instructed by respondent to bring suit "for this overreaching and diversion of his refund into your use" unless the matter was adjusted.

We are unable to see how this letter could change the result if a new trial were granted. Counsel for appellant argue that it destroys respondent's theory of ambiguity in the notice of cancellation of the house policy and conclusively shows that respondent knew long prior to the fire that both policies had been cancelled. They say that this letter shows that "approximately six months before the fire that destroyed his house he (respondent) had demanded the return premium for his store policy, thus proving that he then knew it had been cancelled." If, as appellant argues, the fact that respondent made such demand is material, appellant could have acquired this knowledge from White, its local agent. We are unable to see any abuse of discretion on the part of the trial Judge in refusing this motion. We may further add that it is very doubtful whether Mr. Anderson while undertaking to represent respondent in some litigation relating to another policy had any authority to make an admission binding him in this case. *Hall v. Benefit Association of Railway Employees,* 164 S. C. 80, 161 S. E. 867.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.