19058

Carl MAY, Respondent, v. Earl L. GENTRY, Appellant.

(174 S. E. (2d) 764)

*Harold N. Morris, Esq.,* of Greenville, *for Appellant,*

244

*Kenneth C. Porter, Esq.,* of Greenville, *for Respondent,*

May 27, 1970.

BUSSEY, Justice.

In this civil action predicated upon assault and battery the jury returned a verdict of $3,100.00 actual damages and $50.00 punitive damages. The appeal is from an order denying a motion for a new trial, all exceptions being addressed to asserted errors in the charge of the trial judge.

The defendant-appellant Gentry is a brother-in-law of the plaintiff-respondent May, Gentry having married an older sister of May. On September 28, 1968, Mr. and Mrs. Gentry with several of their children drove in an automobile to the May home where an older Gentry son was already visiting. At the May home there were two automobiles parked in the driveway, with the result that the Gentry automobile could only partially enter the same. Mrs. May was preparing to be driven to the grocery store by a Mrs. Guthrie who was visiting there and whose car was parked in the driveway. A controversy between the plaintiff May and the Gentrys developed about moving the Gentry automobile so that the Guthrie automobile could get out of the driveway. Gentry did remove the Gentry automobile, but an argument or altercation continued between May and his sister, Mrs. Gentry. The final result was that May was shot by Gentry three times with a .22 pistol and seriously wounded.

Gentry's answer admitted the shooting, but, by way of defense, asserted that the shooting was in defense of Mrs. Gentry, it being alleged that at the time he was shot May was brutally assaulting and inflicting serious injury upon Mrs. Gentry.

As might be expected, there is sharp conflict in the evidence as to the sequence of events which led up to and resulted in the shooting. In brief, the testimony in behalf of the plaintiff was to the effect that the Gentrys were politely asked by Mr. May to remove the Gentry automobile so that the Guthrie automobile could be backed out of the driveway. Mrs. Gentry refused to remove the car and instead commenced berating Mrs. Guthrie who was still in the house at the time. May went back into the house and got a stick, which was described as a part of a shovel handle, some three feet long, came back in the yard and told Mrs. Gentry at one point that he would beat the Gentry car full of dents unless it was moved. Gentry then moved the car across the highway and parked it. May asked his sister to leave but she would not. He then took her by the arm and walked her to the road where she broke loose, and grabbed hold of the stick which May still had. The two struggled over the stick and one or both of them fell from the roadway into the driveway, after which May had started in the direction of his house when he was shot in the back by Gentry.

The version of the affair as given by the Gentry witnesses is substantially as follows. The Gentrys were standing beside their car at the edge of the roadway talking to their son, who was already at the May home, when May came out of the house drunk and cursing and told them if they didn't move their car he would fill it full of holes, and went back in the house saying, "I'll get my gun." May, however, did not get a gun. Gentry promptly moved the automobile across the street and parked it in a church yard. Mrs. Gentry was still standing at the edge of the road when May came running down the driveway and hit Mrs. Gentry across the breast with a stick, knocking her down into the road or street. She tried to get up and in the course of doing so was hit by the stick four or five times, and May did not stop beating her with the stick until shot, when he dropped the stick. Gentry admitted that May was shot in

the back, and all witnesses seemed to agree that when May fell he was in his yard proceeding toward his house. Gentry testified that he fired one warning shot into the bank of the road or street before firing the three bullets which struck May.

Appellant's first exception is as follows:

■ "The Court erred in charging the jury that the Defendant was required to prove the element of self-defense. The error being that the Defendant pleaded defense of an innocent party."

At the conclusion of the trial judge's charge no objection thereto was interposed on the ground now asserted, and for this reason it is well settled that he may not now assert error. Sec. 10-1210 of the 1962 Code of Laws; *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96 (1963); *Lundy v. Lititz Mutual Ins. Co.,* 232 S. C. 1, 100 S. E. (2d) 544 (1957); *Mahaffey v. Mahaffey,* 236 S. C. 64, 113 S. E. (2d) 72 (1960).

The second exception reads as follows:

■ "The Court erred in charging the jury that since the Defendant admitted the shooting, the only questions to be considered by the jury were the extent of injuries and damages to the Plaintiff. The error being that the Defendant did not admit liability but sought to justfy his acts."

This exception is without merit because the record clearly shows that His Honor did not so charge. To the contrary, he charged the jury to the effect that the defendant was entitled to a verdict if he had established his plea of justification for the shooting.

The third and final exception is the only one which merits any real consideration. According to the plaintiff's witnesses, the altercation between the parties commenced in the yard or driveway of the May home and resulted from the peaceable efforts of May to bring about the removal of the Gentrys and their automobile. Gentry

having pled, in justification of the shooting, defense of his wife, her status at the commencement of the altercation, whether licensee, invitee or trespasser, had a bearing upon whether she was at fault in bringing on the altercation. Because of the foregoing factors, the judge charged the jury, *inter alia,* as follows:

"I would also charge you that a person in possession of property may justify an assault or battery on the ground that it was committed for the purpose of ejecting a trespasser. One who is in possession of property, that is the house and yard immediately adjacent to it, may use such force as is reasonably necessary to eject a trespasser. Or, if one is on premises controlled by another by permission of that person, and the owner or one controlling the premises states that that person shall leave, then that person becomes a trespasser; and the one in control of the propery may use such force as is reasonably necessary even to the extent of taking the life of the one in order to effect an ejectment of such person."

No objection was made to the foregoing portion of the charge, but counsel for Gentry requested an additional charge as follows:

"Of course, a landlord has a right to demand an invitee off of his property, but he must give an opportunity to comply."

The court declined any further amplification of the charge in this respect. The proposition of law embodied in the foregoing request, while not clearly or fully stated, is sound. In *State v. Petit,* 144 S. C. 452, 142 S. E. 725 (1928), it was held that a trespasser ordered to leave may not be forcibly ejected for the failure to leave immediately on request, but is entitled to reasonable time to depart.

We are not convinced, however, that the failure to grant the request under the facts and circumstances of this case constituted prejudicial error. At least by implication, the principle embodied in the request to charge had already been

covered by the charge that the force which may be used in the ejection of a trespasser is "such as is reasonably necessary." The application of immediate force, without giving the trespasser a reasonable time to depart after request, would be the application of such force as was not reasonably necessary.

But in any event, the evidence in this case raised no issue as to whether or not Mrs. Gentry was given a reasonable opportunity to comply with a request to depart. The evidence on behalf of the Gentrys was to the effect that Mrs. Gentry was not upon any part of the May premises when she allegedly was assaulted by May, but rather was in the street or roadway, where she, of course, had a right to be. There was no contention on the part of either Mr. or Mrs. Gentry that she had not been given a reasonable opportunity to depart from the May premises after having been requested to do so.

The evidence on behalf of the plaintiff was to the effect that Mrs. Gentry was a trespasser in the driveway of the May premises, having been requested to leave and having refused; she was given every opportunity to depart, and had been peaceably and reasonably, though firmly, escorted from the premises to the roadway before any physical encounter between Mrs. Gentry and May occurred. Any violent assault upon Mrs. Gentry was denied, it being contended that only a scuffle over the stick occurred between Mrs. Gentry and May, with one or both of them falling in the scuffle. It is fairly inferable from one witness who testified for May that the scuffle over the stick may have started in or at the entrance of the driveway, rather than upon the roadway, but whether she was assaulted or whether she fell in a scuffle over the stick, all witnesses seem to agree that any injury to Mrs. Gentry occurred while she was in the roadway, rather than upon the May premises. Under the foregoing circumstances, we conclude that the evidence presented no issue as to whether Mrs. Gentry was given a reasonable opportunity to depart from the May premises before being

unreasonably and violently assaulted by May, if, in fact, she was so assaulted. If so assaulted, all of the evidence is to the effect that she had already departed.

The exceptions of the appellant being, in our view, without merit, the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.