580 S.E.2d 194

Margaret MURRAY, Respondent,

v.

BANK OF AMERICA, N.A., formerly known as NationsBank, N.A., Appellant.

No. 3634.

Court of Appeals of South Carolina.

Submitted Feb. 10, 2003.

Decided April 28, 2003.

---

338

340

William S. Brown, Christine M. Harrington, of Greenville; for Appellant.

Patrick E. Knie, of Spartanburg; for Respondent.

HUFF, J.:

Margaret Murray sued Bank of America, formerly known as NationsBank, (Bank) alleging it was negligent when it allowed an imposter to open an account in her name. The jury awarded Murray $300,000 in actual damages. The Bank appeals. We affirm.

## FACTS

Margaret Murray lost her driver's license in May 1997. On May 14, 1997, a woman opened an account with the Bank in Murray's name. The imposter presented Murray's driver's license and a social security card to the Bank employee and deposited $100.00 in the account. The employee contacted Check Systems, which is a company that verifies credit, to determine if Murray had any prior check writing problems. Check Systems did not reveal any detrimental information about Murray. The imposter wrote sixty fraudulent checks from the account totaling approximately $7,500.

Murray had never had a checking account with the Bank or any other bank. Murray did not become aware of the account opened in her name until employees of Thermax Carpet Cleaning came to her apartment and asked for her to return a rented carpet cleaner. When Murray went to Thermax, the manager established that she was not the one who rented the cleaner. The manager told Murray that the cleaner had been rented by someone writing a check in her name with the account at the Bank.

On June 2, 1997, Murray went to the Bank and discovered an imposter had opened the account in her name using her driver's license. Murray demanded the Bank close the account. She also requested the Bank inform the merchants who submitted the checks that were returned for insufficient funds that she was innocent and that this was a fraudulent account. She testified that she trusted the Bank to take the requested actions. The Bank, however, failed to close the account until June 30, 1997. Murray also reported the fraudulent account to the police.

In November 1997, Murray was arrested in front of her son, and served with warrants for fifteen fraudulent checks. Murray spent twelve hours in jail. After Murray was arrested, she obtained a letter from the Bank stating she was not the one who opened the account. Murray went to the post office box the imposter provided the bank and found forty-four letters merchants had written her about the bad checks.

Murray was required to appear at three criminal court hearings. Although she was exonerated of the criminal charges she faced, Murray continued to worry about the existence of other unresolved checks. She suffered from stress and anxiety from the incident and had difficulty sleeping. Her face tightened and became numb. She sought medical treatment from the local hospital. Murray was embarrassed by being arrested in front of her son and her neighbors and felt she had to move into another apartment, which was more expensive than the one she had lived in before.

Murray sued the Bank in negligence. The Bank moved for directed verdict at the close of Murray's case asserting the Bank did not owe any duty of care to Murray. The trial court denied the motion. The jury found for Murray and awarded her $300,000 in damages. The trial court denied the Bank's post trial motions. The Bank appealed.

## LAW/ANALYSIS

### I. Existence of a Duty of Care

The Bank asserts the trial court erred when it denied the Bank's directed verdict motion. We disagree.

In ruling on a motion for directed verdict, the trial court must view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. *Id.* The appellate courts will reverse the trial court only when there is no evidence to support the ruling below or the ruling is controlled by an error of law. *Id.*

In order to establish a claim for negligence the plaintiff must prove the following elements: 1) a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty by the defendant's negligent act or omission; 3) the plaintiff was damaged; and 4) the damages proximately resulted from the breach of the duty. *Thomasko v. Poole,* 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). The issue of whether the law recognizes a particular duty is an issue of law to be decided by the court. *Ellis by Ellis v. Niles,* 324 S.C. 223, 479 S.E.2d 47 (1996).

Duty is generally defined as "the obligation to conform to a particular standard of conduct toward another." *Shipes v. Piggly Wiggly St. Andrews* 269 S.C. 479, 483, 238 S.E.2d 167, 168 (1977). Ordinarily, the common law imposes no duty on a person to act. *Carson v. Adgar,* 326 S.C. 212, 486 S.E.2d 3 (1997). An affirmative legal duty to act exists if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Id.*

On June 2, Murray went to the Bank and spoke with Thomas Wright, a former vice-president and banking center manager with the Bank. She testified that she requested the Bank close the fraudulent account and notify the merchants who submitted checks written on the account that the account was fraudulent. When she left, she felt assured that the Bank would handle the matter. Wright testified he notified the Bank's headquarters in Charlotte on May 21, 1997 that the account was overdrawn and requested its closure. The Bank

did not close the account until June 30, 1997, which was almost a month after Murray requested it close the account and notify the merchants. Wright stated the Bank failed to follow its own procedures.

■ We find a relationship between the Bank and Murray arose sufficient to impose upon the Bank a duty of care when Murray went to the Bank seeking closure of the account. The Bank failed to follow its own procedures, did not timely close the account, and did not notify any merchants that the account was fraudulent. We find sufficient evidence in the record from which the jury could determine the Bank breached its duty to Murray after this duty arose. Accordingly, we find the trial court did not err in denying the Bank's motion for a directed verdict.

## II. New trial absolute

■ The Bank argues the trial court erred in denying its motion for a new trial absolute as the jury verdict was so large it must have been the result of caprice, prejudice, or passion. We disagree.

■ The trial court's decision to deny a motion for new trial absolute is within its discretion and will not be reversed absent an abuse of discretion. *Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 466 S.E.2d 727 (1996). When deciding a motion to grant a new trial, the court must look at the testimony and inferences raised in favor of the nonmoving party. *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408, 420 (Ct.App.2000). The court should only grant a motion for a new trial absolute when the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motive. *Knoke v. South Carolina Dep't of Parks, Recreation & Tourism*, 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996). A jury's determination of damages is entitled to substantial deference by this court. *Id.* Mere undue liberality on the part of the jury does not warrant an inference that the verdict resulted from caprice, passion, prejudice, or other improper motives. *Hutson v. Cummins Carolinas, Inc.* 280 S.C. 552, 559, 314 S.E.2d 19, 24 (Ct.App.1984).

Murray was arrested in front of her son and taken to the police car in front of her neighbors, causing her great humiliation. She spent twelve hours in jail. Although Murray suffers from a kidney ailment, the jail attendant refused to allow her to use the bathroom, increasing her embarrassment and discomfort. Due to her stress over the situation, Murray suffered from sleeplessness. In addition, her face tightened up and became numb, prompting a visit to the doctor. She had to hire a lawyer and attend three hearings on the warrants. She stated that after her arrest, she was terrified that the police would come back and arrest her again on more charges. Due to her acute embarrassment of being arrested in front of her neighbors, she moved to a more expensive apartment, which strained her finances and caused more stress.

Most of the damages Murray suffered were intangible. "One cannot easily or with any mathematical certainty place a value on the amount of a person's pain and suffering." *Smalls v. South Carolina Dep't of Educ.*, 339 S.C. 208, 218, 528 S.E.2d 682, 687 (Ct.App.2000). We find the jury's verdict of $300,000 is not so shocking to the conscience of the court that it clearly indicates the verdict was the result of improper motive. Thus, we hold the trial court did not err in denying the Bank's motion for a new trial absolute.

III. Supplemental jury instruction

The Bank argues the trial court committed reversible error by giving supplemental jury instructions.

After it began deliberations, the jury requested additional instructions from the trial court on actual damages. The court repeated its earlier charge on actual damages. After the jury left the courtroom, Murray's attorney suggested the jury may have been wondering what can be considered as elements of actual damages. The court agreed. The Bank objected to the court giving an additional charge, asserting the court's original charge was a fair statement of the law and Murray had waived any objection by failing to object after the original charge. Over the Bank's objection, the court charged the jury:

Okay let me talk to you a little bit about [actual damages]. Mental anguish, pain and suffering, loss of [t]he enjoyment of life, meaning not being able to do the kinds of things you normally did or you did prior to the incident, embarrassment. Those kinds are things that can be considered as actual damages. You're not limited to medical bills, that kind of thing, in determining actual damages.

On appeal, the Bank first argues Murray waived the right to complain about the court's charge on actual damages. It relies on *Lundy v. Lititz Mutual Insurance Company,* 232 S.C. 1, 100 S.E.2d 544 (1957), in which the supreme court stated:

At the conclusion of the main charge, the trial Judge ... excused the jury and asked counsel if any further instructions were desired or if there were any objections to the charge. No objection was offered by either party but appellant's counsel requested an additional instruction relating to a certain phase of the case. The jury was then recalled and the requested instruction given. After doing so, the Court gave certain other instructions which appellant now contends constituted a charge on the facts. However, in the main charge, ... the Court gave substantially the same instructions as those now complained of. If appellant thought these instructions violated Article 5, Section 26 of the Constitution, which we are inclined to think they did, counsel should have made timely objection when the jury was excused at the conclusion of the main charge. They waived the objection by failing to do so. Appellant cannot now complain of the Court's repeating substantially the same instructions to which counsel failed to object when given an opportunity to do so.

*Id.* at 10, 100 S.E.2d at 548.

It is certainly true that an appellant who failed to object to a jury charge at the first opportunity cannot complain about the charge on appeal. However, that appellate rule of error preservation does not prevent the trial court from supplementing its charge if it decides to do so.

The Bank also argues the trial court erred in giving the supplemental charge because it emphasized the recoverability of damages for mental distress. The Bank, however, did

not raise this objection to the trial court when it gave the supplemental charge. Accordingly, we find this argument is not preserved for our review. *State v. Benton*, 338 S.C. 151, 526 S.E.2d 228 (2000) (stating issue not preserved if party argues one ground for objection at trial and a different ground on appeal).

IV. Statements in closing argument.

The Bank argues Murray's counsel made improper remarks to the jury during his closing. We find no reversible error.

 The Bank first contends Murray's counsel attempted to appeal to the sympathy of the jury by asking them to put themselves in Murray's place. During the closing, Murray's counsel stated, "And on November 25th, 1997, some four or five months later, there's an officer at her door, and just put yourself in your home, in your home——." The Bank's attorney objected.

The following colloquy then occurred:

The Court: Mr. Knie (Murray's attorney).

Mr. Knie: Okay.

Mr. Brown (the Bank's attorney): That's improper.

The Court: Rephrase that, sir.

Mr. Knie: Just try to imagine the——

Mr. Brown: Again, Your Honor, he's asking them to imagine being in that same position. It's improper.

The Court: Mr. Knie.

Mr. Knie: All right. I'll do my best, Your Honor.

Although the trial court did not use the word "sustain," it is obvious that the court sustained the Bank's attorney's objection. The Bank's attorney failed to ask the trial court to strike the statement or give the jury a curative instruction. We find the Bank's argument complaining about Murray's attorney's comments is not properly before this court. *See State v. Patterson*, 324 S.C. 5, 18, 482 S.E.2d 760, 766 (1997) (holding the alleged impropriety of closing argument was not preserved for review where the trial court sustained an objection by opposing counsel, but counsel did not move to strike or request a curative instruction).

The Bank also argues that during his closing argument Murray's counsel improperly sought the jury to make a judgment regarding questions of law. During the closing, the following colloquy occurred:

> MR. KNIE: I asked for permission to publish what [the Bank's] net worth was, and obviously it was met with objection as you could well imagine.
>
> MR. BROWN: I'm gonna object to that. It's for the Court to decide objections. It's not for counsel to make comments about objections.
>
> THE COURT: I'm going to overrule the objection. But Mr. Knie, you're treading on thin ice.

We find any error in the trial court overruling the Bank's objection to this testimony harmless. *See GTE Sprint Communications Corp. v. Public Serv. Comm'n of S.C.*, 288 S.C. 174, 181, 341 S.E.2d 126, 129 (1986) (stating that where a party shows no prejudice, the error, if any, is harmless).

## CONCLUSION

Based on the foregoing reasons, the jury's verdict in favor of Murray is

**AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.